56 So.2d 774 (1952)
DOYLE et al.
v.
PENTON LUMBER CO., Inc.
No. 3492.
Court of Appeal of Louisiana, First Circuit.
January 23, 1952.
Rehearing Denied March 24, 1952.
Writ of Certiorari Denied April 28, 1952.
*775 Edward K. Alexander, De Quincy, for appellants.
Murray Anderson, Lake Charles, for appellee.
DORÉ, Judge.
This suit arises out of the accidental injury sustained by Curtis Doyle, an employee of the defendant Penton Lumber Company, Inc. on the night of July 29, 1950 while en route to his employment and his subsequent death from such injuries on the morning of July 30, 1950. The plaintiff, Mrs. Erma Doyle, is the surviving widow of Curtis Doyle and she sues individually and as natural tutrix of four minor children born of the marriage, under the dependency provisions of the Workmen's Compensation Act, praying for compensation at the maximum rate for three hundred (300) weeks. She alleges in her petition that at the time of his accidental injury, Curtis Doyle was, under the terms of the compensation law and its jurisprudence, within the course and scope of his employment by the defendant company.
The defendant admits that the accident occurred as alleged and admits that Curtis Doyle was in its employ at the time of the accident and that defendant was engaged in a hazardous occupation and further it was stipulated between the parties that in the event of liability the rate of compensation in this case should be $30.00 per week. However, the defendant denies liability on the ground that at the time of the accidental injury and resulting death, Curtis Doyle was not in the course and scope of his employment.
After trial of the case, the trial judge, for reasons set forth in a thorough, well written opinion, rendered judgment in favor of the plaintiff granting compensation to her individually and as natural tutrix of the four minor children in the sum of $30.00 per week for three hundred (300) weeks, beginning on July 29, 1950 with interest at 5% per annum on all delinquent installments plus all costs. The defendant has appealed.
The sole question involved in the case is whether or not Curtis Doyle at the time of his accidental injury was in the course and scope of his employment.
The facts are briefly as follows: Curtis Doyle lived at a community known as Lunita some seven miles from De Quincy. The lumber company by whom he was employed as a fireman was situated on the outskirts of De Quincy. His hours of work were from 11:00 p. m. to 7:00 o'clock a. m. In order to reach his place of employment he had to travel from his home in Lunita across the town of De Quincy to a gravel road which crossed the tracks of the main line of the Missouri-Pacific Railroad. Upon arriving at this gravel road he had two routes by which he could reach his place of employment. One route was to cross the track at the gravel road and then follow the gravel road approximately four hundred (400) feet to the company lumber year. The other route was along the Missouri-Pacific Railroad right of way. It appears that the second route was the shorter of the two for Curtis Doyle to his particular place of employment and that this was the route which he usually took when traveling on foot. Of course, when traveling by vehicle, the only route available was the gravel road. It is shown that the decedent in going to work at times used a bus and at other times was taken to his place of employment by a neighbor, named Joe Holley. On the night of the fatal accident it is shown that Joe Holley drove his automobile to the home of Curtis Doyle and picked him up at 10:10 o'clock and discharged him later at a point where the gravel road intersects the railroad right of way and that thereupon Curtis Doyle started walking along the south side of the railroad on his way to the defendant's mill; that he had to travel a distance of about 313 feet along said right of way before he could actually enter upon the premises of his employer; that before he had traveled far enough to enter the premises he was *776 struck by a train of the New Orleans, Texas and Mexico Railway Company traveling on said main line of the Missouri-Pacific Railroad and as a result thereof both of his legs were severed, causing his death some hours thereafter.
It is clearly shown that if there is any liability on the part of the defendant, under the terms of the Workmen's Compensation Act, LSA-R.S. 23:1021 et seq., it must be established under one of the exceptions to the general rule that, to be compensable, an accident must occur on the premises of the employer, during working hours and while the employee is engaged in the business of his employment. The exception relied upon by the plaintiff is that the injury occurred near decedent's place of employment and resulted from a hazard to which the decedent was exposed because of his employment. This exception, commonly referred to as the proximity rule, has been applied frequently by our courts where employees have been injured while going to and returing from work.
As set forth by the trial judge in his written opinion, two of the leading cases with reference to the proximity rule are, Cudahy Packing Co. of Nebraska v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, and Bountiful Brick Co. v. Giles, 276 U.S. 154, 48 S.Ct. 221, 222, 72 L.Ed. 507 involving facts similar to those in the present case and wherein in each case the proximity rule was applied and it was held that the injury was compensable. In the Bountiful Brick Company case the Court said: "The present case, though it comes nearer the border line, falls within the principle of the Parramore Case. Since the only way of access to its brickyard from the east was across the railway tracts, the company necessarily contemplated the crossing of them by its employees. No definite line of travel being indicated by the company or followed by the employees, who, with the company's full knowledge and acquiescence, habitually crossed wherever they saw fit, it results that, however the crossing was made, the risk thereby incurred was reasonably incidental to the employment and became annexed as an implied term thereof." See also Jones v. Louisiana Central Lumber Co., 2 La.App. 260; Ward v. Standard Lumber Co., 4 La.App. 89; LeBlanc v. Ohio Oil Co., 7 La.App. 721, and Guient v. Mathieson Chemical Works, Inc., La.App., 41 So.2d 493.
Counsel for defendant contends that the case at bar can be distinguished from the cited cases on two grounds; one, that the evidence shows that the decedent was discharged from his friend's automobile at 10:45 and that the accident happened at 11:20 and that therefore he was clearly loitering at the time of the accident and the case is thereby removed from the proximity rule, and, two, that the only hazard the decedent had to surmount was to cross the railroad at the gravel road and that having done so, the subsequent hazard of walking on the railroad right of way, which was not necessary, was assumed by the decedent, citing the case of Walker v. Lykes Brothers-Ripley S. S. Co., Inc., La.App., 166 So. 624.
With reference to the first point relied upon by the defendant, it is very true that Holley, the man who took decedent to the point where he began to walk to his employment, stated that he discharged him at 10:45 and the preponderance of the evidence is to the effect that he was struck by the train at about 11:20 p. m. It is argued by the defendant that since the decedent spent thirty-five minutes between the point of discharge and the point where he was to enter his employer's premises, a distance of only 313 feet, it is evident that he could not have been walking toward his place of employment all of that time and that it should therefore be concluded that he had been loitering or had turned aside to other acts which were not connected with his employment. As stated by the trial judge, such an argument, of course, is based on the assumption that Holley's estimate of the time when decedent left his car and started walking toward the mill is correct.
The evidence further shows that after the accident, decedent's lunch enclosed in a paper bag, a package of cigarettes, a thermos bottle and a pint of whiskey about half full were found in the middle of the main line of the railroad track all together *777 and not scattered; that none of these articles were broken or damaged in any manner. The defendant argues that this evidence is further proof that the decedent had stopped and placed these items on the ground before the accident occurred and that therefore he was not en route to his place of employment.
(1) In so far as the time element is concerned, as stated above, the contention of defendant is based wholly on the estimate made by the witness Holley and obviously the trial judge, who had the opportunity of seeing and hearing Holley on the witness stand, did not place too much reliance on that estimate. It is noted from reading Holley's testimony that he is not exactly logical. He states that he left the decedent's home at 10:10 and stopped only once on his way to the destination and that was at the bus station at De Quincy where they merely partook of a soft drink and then proceeded to the destination. In other words, according to him, it took thirty-five minutes to travel from the home of decedent, a distance of about eight miles and to take one soft drink. There is one place in his testimony, upon being questioned, as to the time that decedent was discharged. He states, "About a quarter of eleven. He was a little late." (Emphasis supplied). The fact that the pint of whiskey found on the track was half empty, combined with the apparent uncertainty as to the time element on the part of the witness Holley, raises a reasonable supposition that the drinks indulged in by him and decedent were not soft drinks and it is common knowledge that alcoholic stimulation makes it difficult for a person to make correct estimates, especially of time.
As to the presence of the various articles on the middle of the tracks, it seems impossible to make any accurate conclusion with reference thereto. The defendant surmises that the decedent was necessarily loitering or else these articles would have been scattered at the time of the accident. It can just as well be surmised that upon seeing the approaching train the decedent placed his articles in a position of safety and that thereafter tried to remove himself from his precarious position and in doing so slipped across the rail and as a result the wheels of the train ran over his legs. It is fundamental that the compensation law should be interpreted liberally by the courts in favor of an injured employee. In this case there is no question that when the decedent alighted from the car of witness Holley he did so with a sincere intention of proceeding to his work along the route which he usually followed and that he did start on that route and was injured while traveling thereon. It does not seem reasonable to believe, in spite of the peculiar circumstances set forth, that decedent would have been loitering on the railroad right of way, for had he desired to loiter he could have found a much more desirable place to do so. To accuse him of loitering, under the circumstances involved, would require a strict, instead of liberal interpretation of the compensation law.
The second contention of defendant, to the effect that the decedent had surmounted the only obstacle on his route to his employment, to-wit, crossing of the railroad tracks at the gravel road, in our opinion, does not require lengthly discussion. It is clearly shown by the evidence that neither decedent nor the other employees had ever been instructed to use the gravel road exclusively or not to use the railroad right of way. It is also clearly shown that the decedent used the railroad right of way as often, if not oftener, than the gravel road to the knowledge of his foreman; that he did so for the simple reason that it was shorter and a more convenient route to his particular place of employment. Moreover, it is not shown by the evidence that the gravel road was any less hazardous than the railroad right of way. On the first, an employee on foot was subjected to the hazards of motor vehicles and on the second he was subjected to oncoming trains and it is testified that upon seeing an approaching train a person could place himself in a position of safety.
As set forth by the trial judge and contended by counsel for plaintiff, the case of Walker v. Lykes Brothers does not appear to be apposite to the case at bar. In the Walker case the plaintiff had left his place *778 of employment and had crossed a roadway which he had to cross to a place of safety. He then proceeded approximately 1200 feet away from his employer's premises and at said point again reentered the roadway and while in the roadway was struck by a vehicle. As set forth herein in the case at bar, the deceased had not surmounted the obstacle or hazard but as the trial judge found was actually in the process of surmounting the hazard at the time of sustaining his fatal injuries. We feel that defendant's contention is therefore untenable.
For these reasons, our final conclusion is that the trial court committed no manifest error in his findings of fact and we fully agree with his conclusion that this case comes within the proximity rule.
Therefore, the judgment is affirmed.
ELLIS, Judge (dissenting).
As clearly stated in the majority opinion, the plaintiffs, to recover, must rely upon an exception to the general rule, commonly designated as the "Proximity Rule." However, a careful examination of the evidence and apposite jurisprudence convinces me that an application of this exception in this case would enlarge the scope of this rule beyond its legal contemplation.
The usual and authorized route for the employees of the defendant company to reach their place of employment was through either of two entrances from a graveled road which began at the paved highway, led across the railroad track and continued in a southerly direction so as to form the western boundary of the defendant's saw mill property. An employee coming to work would come down this graveled road, cross the railroad track and follow the graveled road to either one of the two entrances leading into defendant's plant. It is shown that all employees except the deceased used this means of ingress and egress and it is shown that the deceased went down the graveled road to one of the two entrances about 50% of the time. In my opinion there is not the least doubt that the usual, customary and approved method of entering the defendant's premises was by means of the graveled road. The evidence which includes a number of photographs shows that the track was never meant to be a means of ingress and egress for the employees of the defendant company. It was fenced on both sides, had large stones used for ballast along the edge of the track, and the distance from the rail to the edge of the road bed was approximately twenty inches, then there was a sharp decline with thick undergrowth and tall bushes growing from there to the right of way fence. Also, the spur track that lead from the main line into the defendant's plant had what is commonly known as a steel or iron cattle gap with sharp pointed prongs sticking up all over it, which undoubtedly constituted an extra hazard along this route. The cattle gap at the beginning of the railroad right of way on the graveled road and across the track on the opposite side was the ordinary kind one sees leading into private homes and private roads. The route along the railroad track was never intended as a means of egress and ingress for the employees of the defendant company, and no one used it except the deceased, and on the night of his death, as stated in the majority opinion, he was later than usual in getting to work and probably chose this route because it was slightly shorter. He was due at work at 11 p. m.
Although I am of the opinion that the plaintiff by her own witnesses has proven that the deceased was loitering along this railroad track on the night of his death, I am more concerned with the holding of the majority opinion that this case comes within the "Proximity Rule."
A brief résumé of the testimony of some of the main witnesses is, in my opinion, not amiss, as to the use of the graveled road and railroad track as a means of ingress and egress.
Ralph Gillis, one of the witnesses for plaintiffs, testified that he had been hold by a company official not to use the track as a means of entrance to the plant, that it was against the rules, and there was a road leading up to the office, which was the proper way to enter. Mr. Seymour Hayes, general foreman of the defendant company, testified that the graveled road *779 was the usual, customary and authorized manner of entering the company's premises, and he further stated he had warned at least one employee not to use the track. Further, it was not a general practice for any employee to use the railroad as a means of entrance, and it would have been prohibited had he known it. Mr. Penton, general manager, a director, and co-owner of the defendant company, substantiates my conclusion that the graveled road was the usual and authorized method of entrance, and that he never saw an employee enter the mill from the railroad track. He also stated that he had never entertained a thought of employees coming to work down this track, as it was not company property, but belonged to the railroad. He further testified as follows:
"Q. A person leaving point `B', which is the point where the railroad intersects the gravel road, and going to point `L' which is the approximate location of the boilers, would it be shorter for them to proceed along the railroad track and along the spur or to first go to the office and from the office back to point `L'? A. Mr. Anderson, there is also a road, one of our own that they may enter right here (indicating), and I say, from this point, when they cross the railroad track, that point to the boiler house would be the same as it would from this point to the boiler house. When they cross the railroad, the main N. O. T. & M. Railroad, when they get across there, across the railroad fence, our property joins both sides and they could enter the plant from anywhere along this road. They don't have to come to the office. Other than those who have important jobs that we want to know are there. Any employee can enter anywhere here. There is no fence. Our property isn't fenced. It is open, joining the gravel road, the entire end of our plant.
"Q. They could enter any place along it? A. Along the gravel road.
"Q. But there is no particular spot designated to enter the company property? A. There is a main road at the office where they do a lot a of parking. Naturally, that is where most of them come in.
"Q. But other than that, the employees enter almost any place they please? A. There is another road that they can enter. It is kept open exclusively all the time. It is never closed."
The testimony of other witnesses also clearly shows this graveled road to be the usual method of entering the plant.
The majority opinion seems to stress the fact that the night watchman, whom they refer to as the foreman, had knowledge of the use of this railroad track by the deceased as a means of ingress and egress about 50% of the time, and, therefore, the defendant company acquiesced in the use of the track by this employee. I cannot agree with this conclusion. I see no reason for the defendant company to be legally bound to have instructed its employees not to use a known, visible and hazardous route along the railroad track when a route less dangerous was the usual, customary and respected way for the employees of the company to come and go in the course of their duties.
The Lower Court, as well as the majority opinion, in an effort to circumvent the well-settled rule of law that one who has successfully surmounted a hazard and then, for reasons of his own, places himself again in danger from the same hazard, and is then injured, cannot recover under the proximity rule, held that the deceased, after crossing the track and then walking along said track, was still in the act of surmounting the obstacle or hazard. With this I do not agree, as any hazard from any train ended and should have ended the moment the deceased successfully crossed the track. He then should have proceeded along the graveled road which was the usual and customary route of ingress and egress for the employees of the defendant. When he turned after crossing the track and followed the railroad track, he voluntarily, for reasons of his own, chose to place himself in further danger which was entirely unnecessary. It is to be noted he was going to work at night, and forsaking the safe route he chose to travel over cross ties, rocks and a cattle guard, studded with sharp steel prongs. In so doing he *780 was faced with the constant danger of having to leave the track and take the risk of standing on a narrow strip of level ground along the track, or else descend a steep embankment to avoid being struck by any locomotive that might approach at any time.
The majority opinion states the evidence does not show "the graveled road was any less hazardous than the railroad right of way." Upon the basis of the photographs introduced in evidence and the testimony of those witnesses familiar with the premises, I cannot concur with this statement. Furthermore, the decedent would have been in no danger whatsoever from trains after he crossed the track had he proceeded down the graveled road.
Having concluded the railroad was an unusual and more hazardous means of reaching the deceased's place of employment, I find the rule of law as stated in numerous cases applying the "Proximity Rule", to be that an employee is engaged upon his employer's business while going to and coming from his employer's business, provided he pursues the usual and least hazardous means of reaching his employer's premises. Kern v. Southport Mill, 174 La. 432, 141 So. 19, 21; Rodgers v. Mengel Co., 189 La. 723, 180 So. 499.
In Kern v. Southport Mill, cited above, the Supreme Court of this State uses the following language:
"* * * In determining, therefore, whether an accident `arose out of' the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer's business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer's business reasonably require that the employee be at the place of the accident at the time the accident occurred? * * *
"In the final analysis that is the sum of and substance of the principle on which all compensation cases rest, notwithstanding the many words in which that principle has been wrapped up. It has even been held that an employee is engaged about his employer's business whilst going to and coming from his employer's place of business, provided he pursued the usual and least hazardous means of reaching and leaving his employer's premises."
A statement of the Proximity Rule appears in Corpus Juris, 71 C.J. 729 (Workmen's Compensation, Sec. 449) as follows:
"(b) Use of Ways Leading to or away from Employer's Premisesaa. In General. Harm sustained by an employee while going from work may be compensable if, at the time of the injury, the employee is, if not on the employer's premises, at or near the place of work and on a road or other way intended by the contract of employment as being the means of access to, or exit from, the work. Similarly, compensation may be awarded for injuries sustained while the employee is on a way which was the only practical one open to the employee or a road or way built or maintained for the use of the employee, or the way commonly traveled by the employees of the particular employer to reach or to leave its premises, particularly where it appears that the way was under the control of the master. Of course, injuries sustained by an employee while on a way which he is using under the express or implied direction of his employer, or at least with its knowledge, in going to or from work may be compensable. On the other hand, it is held that when a way is built and maintained for a purpose other than as an approach to the place of work injuries sustained by an employee while on such way going to or from work may not be compensable."
"P. 731. Way not under control of employer. Where an injury arises out of the character of the way to or from the employment, which is not under the employer's control, it does not arise out of the employment, unless by the conditions of the employment the use of the particular way is obligatory on the employee, or the employer approves the use of a way not subject to his control."
Particular illustrations to the exceptions of the "Proximity Rule", also found in Corpus Juris, are as follows:
71 C.J. (W.C. Sec. 450) *781 "bb. Way Chosen by Employee. Where an employee is free to choose his own route to or from work and is injured on a route of his own selection such injury is not, ordinarily, compensable and, of course, where an employee is left free to choose his own method of reaching or leaving his place of employment and he chooses to take a route more dangerous than that afforded to the public, harm which befalls him on his way to or from work is not compensable as an injury arising out of or in the course of his employment. Moreover, where the employee, without knowledge of the employer, uses a way other than that provided by him an accident thereon cannot be said to arise out of the employment. Further, an accident cannot be said to arise in the course of employment when the employee has neglected a proper and recognized way out of the employer's premises and goes by some other means of exit which does not amount to a proper way."
"71 C.J. 732 (W.C. Sec. 450) Note 18: Dambold v. Industrial Commission, 154 N.E. 128, 323 Ill. 377, 379;
"The deceased in this case was left to his own choice of a method of reaching his place of employment. He chose to take a route more dangerous than that afforded to the public. When an employee chooses to go over a route of this character it cannot be said that his act in so doing was incident to his employment."
"(a) Illus. 1. Where one employed as a teamster chose to follow a railroad track to his employer's barn rather than the public streets, which would have made his route a few hundred feet longer than the railroad track, it was held that his death when struck by a railroad train did not arise out of or in the course of his employment so as to be compensable."
"Illus. 2. Injury to a cement company's employee on his way home, while walking on a railroad right-of-way, was held not to arise out of and in the course of employment, Anderson v. Chicago, B. & Q. R. Co., 250 Ill.App. 92."
"Illus. 3. Where a railroad track construction employee by day was injured by a train after his day's work while walking on railroad's tracks after dark on his way from work, where it appeared that the employee chose to take a more dangerous route by the way of the railroad track rather that a highway which ran parallel to the railroad but was a longer way, it was held that the injury was not compensable since the injury was not one arising out of and in course of his employment within the workmen's compensation act. * * *"
"Illus. 4. Death of a workman employed at a chemical plant who was killed by a railroad train while using a railroad bridge over a river to go home after work, was held not to be compensable where there appeared to be at least two other ways of egress from his place of employment which he might have used * * *."
In 71 Corpus Juris 731 (Workmen's Compensation Sec. 449) Note 14, the following illustration is given: "The trial judge found, as a fact, that the decedent was not in the usual passageway of eight feet in width between the tracks of the Pennsylvania Railroad Company and defendant's trestle, but was on the Pennsylvania Railroad track, and that, if the deceased were killed without voluntary action on his part, he must have been a trespasser on railroad company's property. We are not prepared to go as far as the trial judge, and say there is no proof of an accident, but, in the absence of evidence that decedent was forced on the railroad track, we think that, if an accident happened, it did not arise out of decedent's employment." Citing Siemientkowski v. Berwind White Coal Min. Co., N.J.Sup., 92 A. 909.
And in Corpus Juris Annotations, 1936, Page 3399 (Workmen's Compensation Sec. 450:) "Where railroad employee had left employer's premises after work, and proceeded along public highway for some distance, and then taken short cut home across other railroad tracks and was struck by passing train, and short cut was not customarily used by employees, injury held not compensable as `arising out of and in course of employment'." Citing Bryn v. Central R. Co. of New Jersey, 115 N.J.L. 508, 180 A. 874, affirmed 114 N.J.L. 534, 177 A. 857.
*782 In Corpus Juris Annotations 1942, Page 5823 (Workmen's Compensation Sec. 449): "An employee who is on his way to work and has not entered employer's premises, or has undertaken to enter such premises by unauthorized route, is not in `course of employment' * * *." Citing Popovich v. Atlantic Products Corporation, 125 N.J.L. 533, 17 A.2d 492.
In Corpus Juris Annotations, 1942, Page 5823, Section 450:
"Where an employee chooses for his own convenience a hazardous means, a safe means being provided by the employer for his employees, not customarily used, of entering or leaving employer's premises without the acquiescence of his employer the employee steps out of the `course of employment', and any injury occurring under such circumstances does not `arise out of employment'." Citing Associated Indemnity Corporation v. Industrial Accident Commission of California, 18 Cal.2d 40, 112 P.2d 615, prior opinion, Cal.App., 105 P.2d 374.
"Where a workman, for his own convenience, chooses a hazardous means of entering or leaving his employer's premises, one not customarily used by employees in his particular class, and no agreement to furnish or permission to use such means of access or exit being shown on part of employer, workman deliberately assumes a risk which cannot be said to have been in contemplation of parties when the contract of employment was made, and an accident happening under such circumstances cannot be said to have `arisen out of or in the course of employment'." Citing Associated Indemnity Corporation v. Industrial Accident Commission, Cal.App., 105 P.2d 374.
In Corpus Juris Annotations, 1943, Page 5326 (Workmen's Compensation Sec. 451): "Where employee residing in house not owned by employer was struck by train while going home from work through railroad tunnel at some distance from employer's premises, injury was not compensable, notwithstanding that route through tunnel was shorter than highways which employee might have used and such route had long been used by employee and fellow workmen without objection from either employer or railroad company." Citing Williams v. Compensation Commissioner, 124 W.Va. 238, 20 S.E.2d 116.
These authorities indicate that the use of a means of ingress or egress not customarily used, or not approved, even though the shortest route, will take the employee out of the exception of the "Proximity Rule", when such means of ingress or egress is not intended as such and cannot be considered ordinarily a proper means of reaching or leaving work. This is particularly true when the route chosen is more hazardous than another route which might have been chosen. Further, there is a clear indication the employer is under no obligation to absolutely prohibit the employee from using a hazardous alternative route. It seems to be sufficient that the use thereof was not in the contemplation of the parties when the contract of employment was entered into.
American Jurisprudence, Vol. 58, Workmen's Compensation Sec. 205, Page 714, states: "Incurring Unnecessary Perils. It has been held in a number of cases that an injury to a workman which is directly attributable to a peril or danger to which he has unnecessarily exposed himself in the performance of his duties cannot be regarded as having arisen out of his employment, within the meaning of the compensation statutes. But it is held, in some jurisdictions, that, in order to bring a case within the operation of this rule, the exposure of the workman to the added or unnecessary peril must have resulted from a conscious and voluntary choice between comparatively safe and unsafe methods of performing his duties, and not from merely negligent conduct on the part of the employee."
The deceased employee here had already crossed the peril and hazard of the railroad track, but chose to again subject himself to this danger by proceeding along the south side of the track, and consequently the doctrine expressed in the above authorities removes the application of the exception sought to be applied.
The opinion of the trial court, as well as the majority opinion, quoted two of the *783 leading cases with reference to the "Proximity Rule", and conclude the facts therein are similar to those in the present case. These are Cudahy Packing Co. of Nebraska v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, and Bountiful Brick Co. v. Giles, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507. Also the following are cited: Jones v. Louisiana Central Lumber Co., 2 La.App. 260; Ward v. Standard Lumber Co., 4 La.App. 89; LeBlanc v. Ohio Oil Co., 7 La.App. 721; Guient v. Mathieson Chemical Works, Inc., La.App., 41 So.2d 493.
In the Parramore case, supra [263 U.S. 418, 44 S.Ct. 155], the Court stated: "Here the location of the plant was at a place so situated as to make the customary and only practical way of immediate ingress and egress one of hazard. Parramore could not, at the point of the accident, select his way. He had no other choice than to go over the railway tracks in order to get to his work; and he was in effect invited by his employer to do so. And this he was obliged to do regularly and continuously as a necessary concomitant of his employment, resulting in a degree of exposure to the common risk beyond that to which the general public was subjected. The railroad over which the way extended was not only immediately adjacent to the plant, but, by means of switches, was connected with it, and in principle it was as though upon the actual premises of the employer."
In my opinion, under the facts of the case at bar the above authority is against the plaintiff and in favor of the defendant, for in the present case the location of the defendant's plant was not at a place so situated as to make the customary and only practical way of immediate ingress and egress one of hazard with the exception of the railroad crossing itself. The customary and practical way of ingress and egress after crossing the railroad track was along the graveled road and not down the main track itself. Furthermore, Parramore could not at the place of the accident select his way. He had no other choice, while in the present case the deceased had crossed the railroad track and chose a route which continued the danger and hazard to him of being struck by a train. In other words, he had two routes, the usual and customary one, which would have ended all danger of being struck by a train, yet he chose, for reasons of his own, more likely because he thought he was late to work, the improper and unusual and more hazardous route along the railroad track. Furthermore, in the present case the deceased in effect was invited by his employer to use the graveled road and not the railroad track.
In the Bountiful Brick Co. case, supra, it will be noted that the Court found that no definite line of travel was indicated by the company or followed by its employees who, with the company's full knowledge and acquiescence, habitually crossed wherever they saw fit. In the present case the defendant company contemplated the crossing of the tracks where the graveled road crossed and from then on the means of ingress and egress indicated by the company and followed by all of its employees except the deceased was down the graveled road and thence into the defendant's plant. Furthermore, the testimony shows that the defendant company did not have full knowledge nor did it acquiesce in its employees using the railroad track as a means of ingress or egress. On the contrary, there is testimony from an employee that he was warned and prohibited from using this railroad track. I do not think that this case is at all apposite.
In Jones v. Louisiana Central Lumber Co., supra, relied upon by the majority opinion, the plaintiff was injured while in the act of crossing the railroad. In the present case there would be no doubt of plaintiff's right to recover if the deceased had been killed while in the act of crossing the railroad. Further, in the Jones case the plaintiff was on his way to his work by the route usually traveled by him and his coemployees, which is not true in the present case.
In Ward v. Standard Lumber Co., supra, and LeBlanc v. Ohio Oil Co., supra, and Guient v. Mathieson Chemical Works, Inc., supra, also cited in the majority opinion, the facts clearly make them inapposite to the present case. In those cases the plaintiff *784 was injured or killed while surmounting a necessary and usual hazard connected with his employment and was where he was supposed to be at the time of the accident, while in the present case, as previously stated, the deceased had surmounted any danger or hazard from trains once he crossed the railroad track and when injured had traversed some 400 feet along the railroad track.
There is a similarity between Walker v. Lykes Brothers-Ripley S. S. Co., Inc., La.App., 166 So. 624, 626, and the present case. The plaintiff therein was employed on the docks in New Orleans, loading cargo on ships. On the day of his injury, after his employment for the day was concluded, the plaintiff crossed a road-way on his employer's premises, and walked along this roadway toward a public street. When he had walked about 1200 feet off the premises he ran into the road-way in an attempt to secure a ride on a truck, at which instant an automobile traveling in the opposite direction, struck him, inflicting injuries, for which he claimed compensation. The Court in rejecting his demands stated:
"But counsel for plaintiff insists that the facts of this case fall squarely within the departure from the general rule applied by the Supreme Court of the United States in Cudahy Packing Co. v. Parramore, supra, and Bountiful Brick Co. v. Giles, supra, and which is also recognized by all courts of this state, to the effect that, where the accident occurs away from the premises of the master, but within close proximity thereof, by reason of an existing hazard to which the employee was more subjected because of his employment than the general public, liability ensues.
"While recovery is allowed in such cases, certain conditions must be existent before the exception may be invoked.
"At the outset, the employee may not loiter upon the premises of the master, or upon the hazardous property adjacent thereto, but he should be allowed a reasonable time to depart therefrom. The testimony here exhibits that plaintiff's work ended at 4 o'clock p. m. and the accident occurred within 30 to 45 minutes thereafter, at a point some 1000 feet from the premises. There is no evidence tending to show that the plaintiff loitered upon the premises of the defendant or the premises adjacent thereto, and we are of the opinion that the period of time elapsing from the completion of the employment to the time of the accident was not such as to bar recovery.
"Furthermore, the application of the exception to the general rule is without pertinence, unless the location of the master's premises is such that, contiguous thereto, there are hazards which the plaintiff necessarily encounters in going to or departing from work which peculiarly subject him, by reason of his employment, to greater risks than those to which the general public is exposed. * * *
"This roadway extends through the section which is occupied by the defendant. The plaintiff in going to and departing from work must necessarily cross it. At or about 4 p. m. when the plaintiff left work on the day of the accident he crossed the roadway safely. He then pursued a route towards Canal street through the shed on the Tchoupitoulas street side of the roadway. So it will be perceived that he had successfully acquitted himself from the hazard existing on or near defendant's premises. After doing so, he was on his own responsibility. The master had relinquished all supervision, either actual or implied, over plaintiff's movements. The course or term of the employment had been concluded.
"Notwithstanding this, plaintiff, in his anxiety to obtain a ride home from some one not connected with the defendant, voluntarily exposed himself to the danger which he had already successfully passed over, at a point over 1000 feet away from the defendant's premises and upon the property of another. To hold the defendant liable under these circumstances would be to extend the protection granted by the law to all hazards of travel which may be encountered by the employee returning from work to his home, though unrelated to the business of the master. No authority may be found which goes that far; for the theory of the extension of the course of the employment after the working hours. *785 is that the master has selected a site for his workmen which necessarily and peculiarly subjects them, by reason of their employment, to dangers or risks to which the public is not equally exposed.
"Can it be said that a servant, after successfully surmounting the obstacles surrounding him, may again, of his own volition, bare himself to such risks at a different location, for strictly private purposes, and thereby create liability on the part of the master who has lost, actually and constructively, all supervision and control over the servant's movements? We think not.
"The act of the plaintiff was one personal to himself. Thus the resulting accident could not and did not have any causal connection with the business of his master. Neither did his injuries occur during the course of his employment nor arise out of his relationship with the defendant."
The chief difference between the Walker case and the present one is that in the former the employee was returning from the premises, while in the latter the deceased was upon his way to work. The rule of law, however, is the same. The deceased had already negotiated the danger of the railroad tracks on the route toward his employer's premises. He would have been free from any danger connected with the railroad had he proceeded down the graveled road, away from the track, but he continued to expose himself by voluntarily proceeding along the unusual and hazardous route.
The facts of his case, in my opinion, do not justify an application of the "Proximity Rule", but should be governed by the rule as expressed in Walker v. Lykes Brothers-Ripley S. S. Co. See also Babineaux v. Giblin, La.App., 37 So.2d 877; Wyatt v. Alabama Petroleum Corp., 2 La. App. 499; Crysel v. R. W. Briggs & Co., La.App., 146 So. 489; Harless v. Forgy, Hanson & McCorkle, La.App., 149 So. 135.
The "Proximity Rule" should be limited to those types of cases in which the employee is using a route anticipated by the contract of employment, and should not apply to those where it is shown the employee used an illogical, hazardous, indirect and unauthorized route. Nor do I deem it necessary the employer specifically warn and prohibit each employee against using any unsafe and hazardous route when a logical, customary, usual and safer route is afforded.
I dissent, with respect, from the majority opinion.