## BOUNTIFUL BRICK COMPANY ET AL *v.* GILES ET AL.

### ERROR TO THE SUPREME COURT OF UTAH.

No. 193.   Argued January 18, 1928.—Decided February 20, 1928.

1. Liability may constitutionally be imposed under a workmen's compensation law where there was a causal connection between the injury suffered by an employee and the employment in which he was engaged at the time, substantially contributing to the injury. P. 158.

2. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work over the premises of another in such proximity and relation to the premises of the employer as to be in practical effect a part of them, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance.   P. 158.

3. Award of compensation to a brickyard employee who was killed by a railroad train while crossing the right of way, off the public road, on his way to work—*held* consistent with the Fourteenth Amendment, in view of the facts stated in the opinion.

68 Utah 600, affirmed.

ERROR to a judgment of the Supreme Court of Utah, affirming an award of compensation made by the State Industrial Commission against the Brick Company for the death of one of its employees.

*Mr. Henry D. Moyle* for plaintiffs in error.

Injuries to employees, going to or returning from place of employment, or after leaving on personal errands, are not compensable.   *Dambold* v. *Industrial Comm.,* 323 Ill. 377; *St. Louis Coal Co.* v. *Industrial Comm.,* 325 Ill. 574; *United Disposal Co.* v. *Industrial Comm.,* 291 Ill. 480; *Terminal Ass'n* v. *Industrial Comm.,* 309 Ill. 203; *Polko* v. *Taylor-McCoy Co.,* 289 Penn. 401; *Whitney* v. *Hazard Lead Works,* 105 Conn. 512; *Georgia Ry. Co.* v. *Clore,* 34 Ga. App. 409; *London Guaranty Co.* v. *Smith,* 290 S. W. 774; *Industrial Comm.* v. *Enyeart,* 81 Colo.

521; *Ditzler Poultry Co.* v. *Forsythe,* 86 Ind. App. 136, *McKenzie* v. *Industrial Comm.,* XXIV Oh. L. Rep. 480; *Simonds* v. *Reigel,* 165 Minn. 458; *Paulauskis' Case,* 135 Atl. 824; *Kinslow's Case,* 136 Atl. 724; *Reed* v. *Bliss Co.,* 225 Mich. 164; *Kent* v. *Virginia-Carolina Co.,* 143 Va. 62; *Devoe* v. *New York Ry.,* 218 N. Y. 318; *Norris* v. *N. Y. C. R. R. Co.,* 220 App. Div. (N. Y.) 359; *McMahon* v. *B. T. & J. J. Mack,* 222 N. Y. S. 79; *Leveroni* v. *Travelers' Ins. Co.,* 219 Mass. 488; *Bell's Case,* 238 Mass. 46; *Mazeffe* v. *Comm.,* 106 Kans. 796; *De Constantin* v. *Comm.,* 75 W. Va. 32; *Covey-Ballard Motor Co.* v. *Industrial Comm.,* 64 Utah 1; *North Point Irrigation Co.* v. *Industrial Comm.,* 61 Utah 421; *Harris* v. *Henry Cheney Corp.,* 221 App. Div. (N. Y.) 205; *Clapp's Parking Station* v. *Industrial Comm.,* 51 Cal. App. 624.

This case is to be considered as though the Utah statute had, in specific terms, provided for liability upon the precise facts constituting the case at bar. *Cudahy Packing Co.* v. *Parramore,* 263 U. S. 418; *Ward* v. *Krinsky,* 259 U. S. 503.

Industrial Acts do not protect workmen while crossing railroad private rights of way, in going to and coming from their places of employment. *Dambold* v. *Industrial Comm.,* 323 Ill. 377; *Leveroni* v. *Travelers' Ins. Co.,* 219 Mass. 488; *Terminal Ass'n* v. *Industrial Comm.,* 309 Ill. 203; *St. Louis Coal Co.* v. *Industrial Comm.,* 325 Ill. 574; *Georgia Ry. Co.* v. *Clore,* 34 Ga. App. 409; *Bell's Case,* 238 Mass. 46.

The Utah Court has repeatedly held that injuries to employees on their way to and from their place of employment do not arise out of or in the course of their employment, and are therefore not compensable. *Covey-Ballard Co.* v. *Industrial Comm.,* 64 Utah 1; *North Point Irrigation Co.* v. *Industrial Comm.,* 61 Utah 421; *Cudahy Packing Co.* v. *Industrial Comm.,* 60 Utah 161.

*Mr. Samuel B. Horovitz,* with whom *Mr. Charles H. Houston* was on the brief, for defendants in error.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

The question for determination is whether the Utah Workmen's Compensation Act (Comp. Laws, Utah, 1917, § 3133, and subsequent amendments), which provides compensation for personal injury or death of an employee by accident "arising out of or in the course of his employment," as it was construed and applied to the facts by the court below, contravenes the due process of law clause of the Fourteenth Amendment.

It is difficult to make a satisfactory statement of the facts from the evidence because of the absence from the record of a plat of the premises which was used before the state industrial commission and referred to by the witnesses, particular places, position of railway tracks, etc., being pointed out by references to the plat. But considering the testimony in connection with the findings of the industrial commission and of the court below, the following is a fair summary:

On June 17, 1925, Nephi Giles, an employee of the brick company, while crossing the tracks of the Bamberger Electric Railroad Company on his way to work, was struck by a train and killed. The yard of the brick company is on the west side of the railway tracks immediately adjacent thereto, and connected therewith, as the commission found, by a spur. The railroad tracks run north and south. Giles resided—and the evidence indicates that the employees generally resided—easterly from the railway tracks. In going from their homes to the brickyard, it was impossible to avoid crossing the railway tracks. There was a public crossing, called the Burns road, about 200 yards south of the brickyard. The right of way of

the railway company opposite the yard was fenced on both sides.   Giles, as well as other employees, in going to work, sometimes followed the Burns road to the railway crossing, and then went north along the railway tracks to the northeast corner of the brickyard and thence through a gap in the fence to the north entrance of the yard; and sometimes employees, including Giles, entered the right of way through the east fence at other points north of the Burns road, and thence crossed the tracks more or less directly to the gap.   This varied practice was well known to the company and carried on without objection on its part.   It was possible to reach the brickyard by following the Burns road across the railway tracks and for a distance west, and thence northerly and easterly to the west entrance of the yard, but this way was long, circuitous and inconvenient, and, so far as the evidence shows, not used.   A deep open ditch lying north of the road prevented access to the south end of the brickyard.

The manager of the company testified that he knew of the many ways by which the employees crossed the tracks; that he had seen Giles coming in all ways; that he cautioned Giles a number of times to be careful, but did not instruct him or any of the employees to discontinue these methods of crossing.

On the occasion of the accident which resulted in his death, Giles entered the Bamberger right of way through the wire fence on the east side at a point nearly opposite the gap in the west fence.   He was struck while proceeding across the tracks to this point of exit.

From these facts the industrial commission found the company liable and made an award accordingly, which the court below affirmed.   68 Utah —.

Whether Giles was negligent in entering through the fence where he did, or in crossing the tracks, or in not

selecting the safest way, are matters not relevant to the inquiry. Liability was constitutionally imposed under the Utah compensation law if there was a causal connection between the injury and the employment in which Giles was then engaged substantially contributing to the injury. *Cudahy Co.* v. *Parramore,* 263 U. S. 418, 423–425. And employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words, the employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached. Probably, as a general rule, employment may be said to begin when the employee reaches the entrance to the employer's premises where the work is to be done; but it is clear that in some cases the rule extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer. *Id.,* p. 426. And see generally, *Procaccino* v. *Horton & Sons,* 95 Conn. 408; *Merlino* v. *Connecticut Quarries Co.,* 93 Conn. 57; *Corvi* v. *Stiles & Reynolds Brick Co.,* 103 Conn. 449; *Starr Piano Co.* v. *Industrial Acc. Com.,* 181 Cal. 433, 436–438; *Sundine's Case,* 218 Mass. 1, 4.

In the *Parramore* case the same Utah statute was under consideration, and we held that it was valid as applied to the case of an employee who, while on his way to work,

was killed by a locomotive at a public crossing on a railroad adjacent to his employer's factory. There, as here, it was necessary for the employees, in order to get to the place of work, to cross the tracks, and they were in effect invited by the employer to do so. The difference between the two cases is that in the former the crossing customarily used was entirely upon a public road, while here the way followed was in part along the railway tracks and by crossings within the railroad right of way wherever the employees upon their own volition might choose to go.

The present case, though it comes nearer the border line, falls within the principle of the *Parramore* case. Since the only way of access to its brickyard from the east was across the railway tracks, the company necessarily contemplated the crossing of them by its employees. No definite line of travel being indicated by the company or followed by the employees, who, with the company's full knowledge and acquiescence, habitually crossed wherever they saw fit, it results that, however the crossing was made, the risk thereby incurred was reasonably incidental to the employment and became annexed as an implied term thereof. If it were necessary to strengthen the implication of consent on the part of the company to the crossing by any way its employees chose to take, it would be enough to refer to the testimony of the manager, who, knowing of the practice, did not forbid it, but in effect approved it by warning Giles simply to be careful.

It is said that Giles was a trespasser upon the railroad right of way; but if that be established by the evidence, the answer is that, if the company, not being the owner, could under any circumstances defend upon that ground (*Daltry* v. *Electric Light Co.,* 208 Pa. 403, 411–412), it cannot avail itself of the defense here because it consented to the trespass.

*Judgment affirmed.*