## WALKER v. LYKES BROTHERS-RIPLEY S. S. CO., Inc. *

### No. 16285.

Court of Appeal of Louisiana. Orleans.

March 23, 1936.

Wm. A. Green, of New Orleans, for appellant.

A. R. Martinez, of New Orleans, for appellee.

McCALEB, Judge.

Plaintiff has filed this suit for compensation alleged to be recoverable from his employer because of injuries he received in being struck by an automobile when he was returning home from work.

The chief defense to the action is that the plaintiff's injuries were not inflicted by accident arising out of and in the course of his employment, as provided by the Employers' Liability Act, No. 20 of 1914, § 2, as amended by section 1 of Act No. 85 of 1926.

The court below found for the defendant, and plaintiff has appealed.

The facts of the case are substantially as follows:

Plaintiff was a negro longshoreman, and on September 24, 1934, was in the employ of the defendant doing stevedore work for a wage of 65 cents per hour. On that day defendant was engaged in loading a vessel with cargo. The ship was situated in the Mississippi river, being tied to the Washington avenue dock. The dock is a public utility extending from Jackson avenue to Louisiana avenue in the city of New Orleans. It is divided by fire walls safeguarding the spread of fire in case of conflagration. It is also divided into sections, and

the Washington avenue section is allotted by the board of commissioners for the port of New Orleans to the defendant for use in the steamship business. There is erected upon the dock large sheds, which are used by the shippers occupying sections under license of the dock board. The sheds are equipped with large storm curtains, which protect their interior from the weather. The curtains may be raised or closed.

These sheds comprise one unit, except for openings known as fire walls. From Washington avenue in the direction of Canal street there is a fire wall at Fourth street and also one at First street. The distance, from where the plaintiff was working, to the Fourth street fire wall is approximately 200 feet. From the Fourth street fire wall to the First street fire wall, the distance is approximately 1000 feet. Between the shed of the dock and the river there is an open space described as an apron which may be used by pedestrians. At Washington avenue the shed has an open door, which leads to the public thoroughfare and which is generally used by the workmen of the defendant as a means of ingress and egress to and from the defendant's premises. Under the shed, in approximately the center thereof, there is a space which is used primarily by vehicles making or receiving deliveries to and from the dock, but there is evidence to the effect that the general public may use, and does actually employ, this portion of the shed for pedestrian and vehicular traffic.

At the section allotted to the defendant on the dock as above described, the plaintiff was working. The loading of cargo into the vessel was completed at 4 p. m. on the day in question, and at that time plaintiff's employment for that day was concluded. Before leaving defendant's premises, plaintiff assisted in closing one of the storm curtains and changed his trousers. He then crossed the roadway in the shed, within the section allotted to the defendant, from the river side to the Tchoupitoulas street side thereof, and walked alongside or near said roadway in the direction of Canal street. He had treaded some 1200 feet off the defendant's premises, past the Fourth street and the First street fire walls, when at a point, described to be a short space from the downtown side of the First street fire wall, he ran into the roadway towards the river side thereof, in an attempt to hail a ride upon a truck which was going in his direction. At that moment an automobile,

owned by a third person, traveling in the opposite direction, viz., towards Washington avenue, struck the plaintiff, and he sustained injuries consisting of a broken knee.

Under these facts, may plaintiff be said to have received his injuries by accident arising out of and in the course of his employment with the defendant?

The determination of cases, involving questions such as presented here, is not free from difficulty.

The courts of Louisiana have had before them for decision numerous cases involving the question of whether an injury arose out of or was in the course of a workman's employment, and we may observe that a study of these cases reveals that no exact formula can be laid down which will automatically solve every case, and the conclusion in each case must depend upon the particular facts therein involved. However, these facts must be governed by the application of certain well-defined rules of jurisprudence in seeking a just result.

■ We are cognizant that it is a general rule, in workmen's compensation cases, that the injury suffered by an employee in going to and returning from his employer's premises, where the work of his employment is carried on, does not arise out of his employment so as to entitle him to compensation. See Ruling Case Law, Permanent Supplement, vol. 8; Thibodeaux v. Yount Lee Oil Co., 13 La.App. 591, 128 So. 709; Voehl v. Indemnity Ins. Co. of N. A., 288 U.S. 162, 53 S.Ct. 380–382, 77 L.Ed. 676, 87 A.L.R. 245.

■ Under this rule it has been held that the injury must occur during the course of the employment, which means during working hours, and must also arise out of the employment. Arising out of the employment means that the accident must necessarily be the result of some risk to which the employee is subjected in the course of his employment by reason of the fact of his employment. See Kern v. Southport Mill, 174 La. 432, 141 So. 19.

But there are two well-recognized exceptions to the general rule above set forth.

■ One departure occurs when the employer furnishes transportation to the employee to take him to work or to return him from work as an incident to the employment. In such case it is held that an accident occurring to the employee while riding in the vehicle of the employer is compensable, as the transportation provided by the

employer is impliedly a part of the employment contract. See Thompson v. Bradford Motor Freight Lines (La.App.) 148 So. 79; Keyhea v. Woodard-Walker Co. (La.App.) 147 So. 830; Baker v. Texas Pipe Line Co., 5 La.App. 25.

The other exception to the general rule exists when the injury takes place before or after working hours outside of, but within close proximity to, the premises of the master, and results from a hazard to which the employee, by reason of his employment, when considered in connection with the situation of his employer's premises, is subjected to a greater risk than the public in general. For this exception to be invoked, the means of customary ingress and egress to and from the master's premises must be such as to compel the employee to submit, by reason of his employment, to greater hazards than the public in general, although such risks may exist, in some measure, with respect to the general public. Moreover, it has been held in these cases that a continuance of the course of the employment is extended in allowing the employee a reasonable time, before or after working hours, to enter or leave the premises, or hazards adjacent thereto, and, if injury occurs under these circumstances, liability attaches to the employer for compensation. The Supreme Court of the United States has recognized this precept in the cases of Cudahy Packing Co. v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532, and Bountiful Brick Co. v. Giles, 276 U.S. 154, 48 S.Ct. 221, 72 L. Ed. 507, 66 A.L.R. 1402.

Applying the foregoing doctrines of jurisprudence to the facts of the case at bar, it will be seen that the plaintiff would ordinarily be governed by the general rule that recovery will be denied in cases of accident where the injury occurs before or after working hours. It is conceded that plaintiff's work ended at 4 p. m. on the date of the accident. Albeit the evidence is not entirely clear as to the exact time of the occurrence of the accident, considering the testimony as a whole, it is safe to conclude that the injuries were inflicted between 4:30 and 5 o'clock p. m. It is also manifest that the accident did not happen upon the premises of the master, but at a point ranging from 1000 to 1200 feet from the employer's section of the dock board shed. Hence it follows that, the working hours being at an end, and the plaintiff having left the master's premises, the employer was unable, at the time of the accident, to exercise supervision and control over him, either actual or constructive, unless the case falls within one of the two exceptions to the general rule recognized by the courts as above set forth.

The master in the instant case did not furnish the plaintiff with transportation to or from the site of the work. As a consequence, cases cited determining liability upon this ground are inapposite.

But counsel for plaintiff insists that the facts of this case fall squarely within the departure from the general rule applied by the Supreme Court of the United States in Cudahy Packing Co. v. Parramore, supra, and Bountiful Brick Co. v. Giles, supra, and which is also recognized by all courts of this state, to the effect that, where the accident occurs away from the premises of the master, but within close proximity thereof, by reason of an existing hazard to which the employee was more subjected because of his employment than the general public, liability ensues.

While recovery is allowed in such cases, certain conditions must be existent before the exception may be invoked.

At the outset, the employee may not loiter upon the premises of the master, or upon the hazardous property adjacent thereto, but he should be allowed a reasonable time to depart therefrom. The testimony here exhibits that plaintiff's work ended at 4 o'clock p. m. and the accident occurred within 30 to 45 minutes thereafter, at a point some 1000 feet from the premises. There is no evidence tending to show that the plaintiff loitered upon the premises of the defendant or the premises adjacent thereto, and we are of the opinion that the period of time elapsing from the completion of the employment to the time of the accident was not such as to bar recovery.

Furthermore, the application of the exception to the general rule is without pertinence, unless the location of the master's premises is such that, contiguous thereto, there are hazards which the plaintiff necessarily encounters in going to or departing from work which peculiarly subject him, by reason of his employment, to greater risks than those to which the general public is exposed.

Here the evidence shows that the customary practice of the employees of the defendant was to use the exit provided at the Washington avenue dock. It is beyond question that the plaintiff could have em-

ployed this means in departing from the premises. Once he arrives past the Washington avenue door, he is upon the public thoroughfare. It is also apparent that this means of egress is the most accessible to the public street. Conceding, however, that there may be some doubt in denying recovery in a case where the employee has exercised poor judgment in the selection of the routes leading from the premises of his master, it is important to determine whether the plaintiff, in departing from the premises via the roadway through the shed in the direction of Canal street, was exposed to a greater risk by reason of his employment than that existing with reference to the public generally. The only suggestion afforded us in this regard is that the roadway under the shed is more dangerous to the employees of defendant than to the general public, because, by virtue of the employment, its employees must necessarily cross this roadway in order to depart from the premises. There is apparently some force in this contention, because, while it may be said that the general public may and did use this roadway, still the primary purpose of its maintenance is for the benefit of shippers in the loading and unloading of cargo.

This roadway extends through the section which is occupied by the defendant. The plaintiff in going to and departing from work must necessarily cross it. At or about 4 p. m. when the plaintiff left work on the day of the accident he crossed the roadway safely. He then pursued a route towards Canal street through the shed on the Tchoupitoulas street side of the roadway. So it will be perceived that he had successfully acquitted himself from the hazard existing on or near defendant's premises. After doing so, he was upon his own responsibility. The master had relinquished all supervision, either actual or implied, over plaintiff's movements. The course or term of the employment had been concluded.

Notwithstanding this, plaintiff, in his anxiety to obtain a ride home from some one not connected with the defendant, voluntarily exposed himself to the danger which he had already successfully passed over, at a point over 1000 feet away from the defendant's premises and upon the property of another. To hold the defendant liable under these circumstances would be to extend the protection granted by the law to all hazards of travel which may be encountered by the employee returning from work to his home, though unrelated to the business of the master. No authority may be found which goes that far; for the theory of the extension of the course of the employment after the working hours is that the master has selected a site for his workmen which necessarily and peculiarly subjects them, by reason of their employment, to dangers or risks to which the public is not equally exposed.

Can it be said that a servant, after successfully surmounting the obstacles surrounding him, may again, of his own volition, bare himself to such risks at a different location, for strictly private purposes, and thereby create liability on the part of the master who has lost, actually and constructively, all supervision and control over the servant's movements? We think not.

The act of the plaintiff was one personal to himself. Thus the resulting accident could not and did not have any causal connection with the business of his master. Neither did his injuries occur during the course of his employment nor arise out of his relationship with the defendant. Compare Cudahy Packing Co. v. Parramore, Bountiful Brick Co. v. Giles, supra, and Le Blanc v. Ohio Oil Co., 7 La.App. 721.

Counsel for plaintiff further contends that the language used by this court in the case of Thomas v. Shippers' Compress & Warehouse Co., 158 So. 859, is favorable to his cause. On the contrary, the Thomas Case exhibits that the plaintiff must fail in this action. The facts of that case disclose that Thomas worked in Jefferson parish, and, in order for him to go home, after working hours it was necessary to cross the viaduct over Claiborne avenue separating Jefferson parish from the city of New Orleans. While traversing this bridge, on his way home after work, Thomas was struck by a vehicle owned and operated by his employer. We held that the accident did not arise out of his employment or in the course of such employment. The author of the opinion, Judge Leche, after quoting from all applicable cases, says (158 So. 859, on page 868): "In neither case did the injury arise out of, in the course of, or incidental to the employment, and in neither case was there any risk over and above or any greater than that to which the public in general was subjected, or was there any causal connection with the employment."

The employer has urged other defenses to this action, but, in view of the fact that the accident did not arise out of and in the

course of plaintiff's employment, it is unnecessary to consider these points.

For the reasons herein assigned, the judgment appealed from is affirmed.

Affirmed.

