Cooke, J.
This is an appeal from an order of the Appellate Division, Third Department, which affirmed, two Justices dissenting, a decision of the Workmen’s Compensation Board allowing an award to claimant for injuries sustained in an automobile accident found to have arisen out of and in the course of employment.
The salient facts are not in dispute. Claimant, a resident of Buffalo, worked as a laborer for the Seneca Steel Service, Inc., a manufacturer with a plant at 1050 Military Road, Kenmore, New York. The employer maintained on plant property a parking lot for its employees, the entrance to which was from Kenmore Avenue, a four-lane highway running generally in an east-west direction. On July 11, 1972, claimant was assigned to the shift commencing at four in the afternoon. On that day at about 3:55 p.m., after proceeding easterly in his car in the lane adjacent to the center of Kenmore Avenue and after reaching the area of the parking lot, claimant turned left across Kenmore Avenue to enter the parking lot driveway when his car was struck on its right side by a westbound vehicle. At the time of impact claimant’s car was not "more than a foot, maybe even closer” to the driveway or apron of the lot. This collision propelled claimant’s car up the apron, over the sidewalk and into the parking lot where it hit another automobile parked "right along” the sidewalk. The second collision caused claimant’s car to overturn and roll upon his hand, resulting in serious fractures of the wrist and elbow, with attendant permanency and prolonged disability. There was no traffic light or other control at the entrance to the plant.
The Workmen’s Compensation Board found that claimant was entitled to safe ingress and egress to and from the employer’s premises and that claimant sustained an accidental injury arising out of and in the course of the employment. Although concurring in the board’s finding as to the course of employment, the Appellate Division majority, in affirming, held that vehicles parked on the employer’s premises constituted a natural hazard arising out of the employment and that the second collision at that location was the cause of the *142 injuries sustained. It reasoned that the fact that this second collision had a causal relation with events originating off the premises did not preclude a board finding that the accident occurred in the course of employment. The dissenters took the position that the accident originated on a public highway, before claimant attached himself to his employment, and that it did not later become compensable merely because it was concluded on the employer’s premises.
The general rule that employees do not enter into the course of employment until they reach the premises or the entrance to the premises of their employer has been, of necessity, subject to certain well-recognized exceptions (Matter of Bennett v Marine Works, 273 NY 429, 431; Matter of Shafran v Board of Educ., 25 AD2d 336, 337). The commonest ground of extension is said to involve those situations where the off-premises point at which the injury occurs lies on the only route, or at least the normal route, which employees must traverse to reach the plant and that, therefore, the special hazards of that route become the hazards of the employment (1 Larson, Workmen’s Compensation Law, § 15.13, p 4-7). Professor Larson states that this exception to the premises rule contains two components: the first being the presence of a special hazard at the particular off-premises point and the second, the close association of the access route with the premises, so far as going and coming are concerned (p 4-11).
In Matter of Leatham v Thurston & Braidich (264 App Div 449, affd 289 NY 804), claimant was walking on a sidewalk on his way to work in a building in front of which was an entrance doorway and a loading platform. When the premises were reached, he found a large truck extending across the sidewalk and against the loading platform. In order to reach the entrance doorway on the other side of the truck and in attempting to climb between the cab and body of the truck, claimant fell and sustained injuries. In affirming an award to claimant, the Appellate Division stated that usually a plant worker’s employment begins only when he reaches the plant and ends when he leaves but that (p 450) "about the plant, there is a penumbra within which falls the shadow of the employment.” At page 451, it was held: "It is sufficient if the accident arises logically out of the employment and the hazards of the way in and out are part of the employment. When the accident happens from the dangers of the premises and *143 the limits of the business there conducted, it is as though it happened upon the premises themselves. A relationship which brings the accident within the range of the employment is all that is required. In the instant case the claimant had reached the employer’s premises but had not yet entered. His usual route to the door was blocked by the truck which was backed up to the loading platform. The business compelled a choice of risks. He could go around the front of the truck out into the heavily traveled street or he could follow the shorter route to the door by climbing over the truck. Whether the choice he made was reasonable or not was immaterial. Perhaps one who did not desire to enter the building would have gone out into the street around the truck. That he intended to enter the building surely was a consideration in his determination to go by the shorter route directly to the door. The presence of both the truck and the claimant was due to the employment and we cannot say that the accident was entirely disassociated from the employment. To hold that merely because claimant had not actually set foot within the building, there was no relation between the employment and the accident, would be splitting hairs too finely.” In Matter of Cohn v Morningstar Nicol (265 App Div 579), claimant testified she was on her way to work, had reached the sidewalk in front of her employer’s premises, had turned to go up the steps extending onto the sidewalk and leading into the building, and was poised to get on "the” step when her foot slipped and she fell. The decision of the State Industrial Board disallowing her claim was reversed and the matter remitted. In Matter of Rosenwasser v Lanes Lake Success (9 AD2d 1001), claimant was employed at a store which was a part of a shopping center. The employees’ entrance to the store was at the rear, separated from a large parking lot by a sidewalk. Testimony indicated that the sidewalk was under the store’s jurisdiction, that the parking lot was not, and that employees who came to work by bus were required by the employer to cross some part of the lot before reaching the sidewalk and employees’ entrance. Claimant’s fall, allegedly in the parking lot and near the sidewalk, was found to be compensable and an award therefor was upheld. In Matter of Berry v B. Gertz, Inc. (21 AD2d 708) the award was sustained where claimant, a clerk at a mercantile establishment also in a shopping center, fell on her way to work in a parking area used by the buying public and employees at the shopping center but operated by the center owners and as *144 to which claimant’s employer had no ownership or control whatever.
More recently, in Matter of Podhoretz v Rubinstein (35 AD2d 1042), a decision that the accident arose out of and in the course of employment was affirmed. There claimant, while walking to the butcher shop where he worked, held onto the shop window to get to the entrance door since the sidewalk was slippery and, taking out a key to open the door, fell within two feet from the door and broke his hip. A similar finding was arrived at in Matter of Starace v International Term. Operating Co. (39 AD2d 613) where a checker fell on his way to work upon a sidewalk very close to the entrance used by claimant in entering and exiting from the place of work, a nexus being that the gate at said entrance swung across the sidewalk and spot where claimant received his injuries.
While the general rule is that accidents occurring on the public highway, away from the place of employment and outside regular working hours, do not arise out of and in the course of employment, it is equally true that, as the employee comes in closer proximity with his employment situs, there develops "a gray area” where the risks of street travel merge with the risks attendant with employment and where the mere fact that the accident took place on a public road or sidewalk may not ipso facto negate the right to compensation (Matter of Patti v Republic Aviation Corp., 20 AD2d 939, mot for lv to app den 14 NY2d 488; Matter of Brienza v Le Chase Constr. Corp., 17 AD2d 83, 85, 86; see Bountiful Brick Co. v Giles, 276 US 154, 158). When the employee advances to the point where he is engaging in an act or series of acts which are part and parcel of the entrance into the employment premises, the test of compensability is whether there is such a relationship existing between the accident and the employment as to bring the former within the range of the latter (Matter of Leatham v Thurston & Braidich, 264 App Div 449, 451, affd 289 NY 804, supra) or, stated differently, whether the accident happened as an incident and risk of employment (Matter of Evans v J. W. Mays, Inc., 25 AD2d 597, mot for lv to app den 17 NY2d 423).
The driveway to the employer’s parking lot is referred to in the record as "the driveway” and "the entrance to the plant” and there is no proof of any other way through which admission might be gained. After claimant made his left turn to go *145 from the public highway into that driveway, the first impact took place. This turn was made to effect an entry upon employer’s premises for work purposes and was thus an incident of the employment. "The employment contemplated his entry upon and departure from the premises as much as it contemplated his working there” (Cudahy Co. v Parramore, 263 US 418, 426). The risk of employment, the special hazard, could be found in the necessity of making the left turn across traffic in a public street in order to enter the plant. There was a causal relation, a distinct "arising out of’, between the employment and the accident and, in making the left turn at this point, claimant was exposed to a particular risk not shared by the public generally, since the general public would not be making a turn at this junction (see 1 Larson, Workmen’s Compensation Law, § 15.15, p 4-25). This was the reasoning applied by the Supreme Court of California in Greydanus v Industrial Acc. Comm. (63 Cal 2d 490, 491) where an award of compensation was upheld upon an almost identical fact pattern—where the employee "proceeded in his automobile to turn left off the [two-lane] highway to drive to the barn” and, at the time of impact, the "wheels were a few feet short of touching the apron of the driveway”. (See Pacific Ind. Co. v Industrial Acc. Comm., (28 Cal 2d 329; contra Wilkinson v Industrial Comm., 23 Utah 2d 428; Templet v Intercoastal Truck Line, 255 La 193.)
There has been reluctance to extend compensability beyond the premises either because of a supposed lack of a proper standard or the fear that each extension will inevitably and progressively spawn still others (see 1 Larson, Workmen’s Compensation Law, § 15.12). Here, claimant had negotiated a change in direction. The distance in feet or inches between claimant’s vehicle and the driveway or the fact that the wheels were or were not upon the apron at the moment of contact should not be determinative. Rather, the significant factor should be that a turn was necessary to gain entrance. In this delineation, there is not only a sharply defined standard but a workable one as well. Furthermore, to regard such an accident as compensable is in keeping with the fundamental concept that the Workmen’s Compensation Law, being remedial in character, is to be construed liberally to accomplish the economic and humanitarian objects of the act (see Matter of Waters v Taylor Co., 218 NY 248, 251-252).
In light of this analysis, based on this record the Workmen’s *146 Compensation Board could find that the accident arose out of and in the course of the employment and the order of the Appellate Division should be affirmed, with costs.
Judges Gabrielli, Jones, Wachtler and Fuchsberg concur with Judge Cooke; Chief Judge Breitel and Judge Jasen dissent and vote to reverse on the dissenting opinion by Mr. Justice John L. Larkin at the Appellate Division (50 AD2d 76, 79-80).
Order affirmed.