Edwin V. **CALLBREATH**,
Plaintiff—Appellant,

v.

**UNITED STATES** of America,
Defendant—Appellee.

No. 00–35478.

D.C. No. CV 99–5003 FDB.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 8, 2002.

Decided Aug. 8, 2002.

Before HALL, TASHIMA, and RAWLINSON, Circuit Judges.

### MEMORANDUM *

Edwin Callbreath was a crew member aboard the *Cape Intrepid,* a government-owned ship docked in Tacoma, Washington, at a port facility adjacent to railroad tracks. Upon returning from a personal errand and a night out, Callbreath attempted to cross the tracks to gain access to the ship and was severely injured. Callbreath sued the government, as ship owner, for negligence under the Jones Act, 46 U.S.C. app. § 688(a), as well as for maintenance and cure. The district court granted the government's motion for summary judgment. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse in part.

■ The Jones Act grants seamen acting in the course of their employment a claim for personal injury caused by employer negligence. 46 U.S.C. app. § 688(a). The district court granted summary judgment to the government on the ground that Callbreath was not within the scope of his employment when the accident oc-

curred. We disagree. Callbreath adduced evidence that he and other crew members regularly accessed the port facility by crossing the adjacent railroad tracks at a point opposite the ship and that his employer knew or should have known of the use of that route. This evidence is sufficient to defeat summary judgment on the scope of employment issue. *See Bountiful Brick Co. v. Giles,* 276 U.S. 154, 158–59, 48 S.Ct. 221, 72 L.Ed. 507 (1928); *see also Marceau v. Great Lakes Transit Corp.,* 146 F.2d 416, 418 (2d Cir.1945). In addition, we conclude that there is enough evidence that Callbreath's ongoing presence on board the *Cape Intrepid,* while voluntary, nevertheless furthered a vital government interest in staffing and maintaining the ship, thereby giving rise to a triable issue of fact as to whether his return on the night in question was in the course of his employment for purposes of the Jones Act.

■ We nevertheless affirm the district court's grant of summary judgment on the Jones Act claim because he has adduced no evidence of employer negligence. The elements of a Jones Act negligence claim are duty, breach, notice, and causation. *Ribitzki v. Canmar Reading & Bates Ltd. P'ship,* 111 F.3d 658, 662 (9th Cir.1997). Here, even construing all of the evidence in the light most favorable to Callbreath, he cannot prove that the government had any duty to provide for his safe passage across the railroad tracks, which were not under its direct control. *See Lanier v. United States,* 459 F.2d 61, 62 (9th Cir. 1972) (per curiam); *Todahl v. Sudden & Christenson,* 5 F.2d 462, 464 (9th Cir. 1925); *accord Bates v. Prudential–Grace Lines, Inc.,* 375 F.Supp. 774 (W.D.Wash. 1972), *aff'd,* 497 F.2d 900 (9th Cir.1974). Accordingly, we affirm the district court's

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Cir. R. 36–3.

grant of summary judgment on the Jones Act negligence claim.

■ We reverse, however, the district court's grant of summary judgment on Callbreath's claim for maintenance and cure. "Maintenance and cure is the obligation to care for a seaman injured during the course of maritime employment." *Kopczynski v. The Jacqueline,* 742 F.2d 555, 559 (9th Cir.1984). The district court rejected Callbreath's claim on the ground that he was not "in the service of the ship" at the time he was injured. The analysis of whether a seaman is in the service of the ship for maintenance and cure purposes is coterminous with the course of employment analysis under the Jones Act. *See Braen v. Pfeifer Oil. Transp. Co.,* 361 U.S. 129, 132–33, 80 S.Ct. 247, 4 L.Ed.2d 191 (1959). Because there is a triable jury question as to whether Callbreath was acting within the scope of his employment while returning to ship on the night of the accident, the district court's determination to the contrary was in error. Moreover, as maintenance and cure "is in no sense predicated on the fault or negligence of the shipowner," *Aguilar v. Standard Oil Co.,* 318 U.S. 724, 730, 63 S.Ct. 930, 87 L.Ed. 1107 (1943), the absence of negligence on the government's part is not sufficient to deny recovery at this stage.[1]

■ Callbreath also contends that the district court erred in rejecting his request for a hearing on the government's motion for summary judgment. We find this argument unpersuasive. Although a district court is not permitted to deny a request for oral argument made by a party opposing a motion for summary judgment unless the motion is denied, *see Dredge Corp. v. Penny,* 338 F.2d 456, 462 (9th Cir.1964), in order to justify reversing the district court, Callbreath must show prejudice, *see Partridge v. Reich,* 141 F.3d 920, 926 (9th Cir.1998), which he cannot do. In particular, Callbreath was not prejudiced by the district court's statement that he had conceded there were other routes to the ship that did not require crossing the railroad tracks. When read in context, it is clear that what the district court meant was that one could access the ship without crossing the railroad tracks at the point directly across from the *Cape Intrepid,* not, as Callbreath suggests, that it was possible to access the ship without ever passing over railroad tracks. Neither was Callbreath prejudiced by the district court's discussion of the Admiralty Extension Act, 46 U.S.C. app. § 740 ("AEA"), which had no bearing on the resolution of the government's motion. Furthermore, any potential prejudice to Callbreath resulting from the district court's discussion of willful misconduct is negated by our holding on maintenance and cure. Accordingly, although the district court's failure to hold a hearing was erroneous, we reject the contention that it constituted reversible error.

Finally, Callbreath asserts that the district court erred by "possibly" dismissing the case because it did not fall within the AEA, which extends admiralty jurisdiction

---

1. It is true that an act of "wilful misbehavior or deliberate ... indiscretion suffices to deprive the seaman of his protection" under the doctrine of maintenance and cure. *Aguilar,* 318 U.S. at 731. The district court concluded that "Plaintiff Callbreath has not alleged sufficient facts to raise a question of fact as to whether or not his injury was the result of his own willful misconduct." This statement seems to suggest that, even if he had been within the scope of his employment, Callbreath was not entitled to maintenance and cure due to his own misconduct in crossing the railroad tracks. The district court erred, if this is what it had in mind. The government has never contended that Callbreath's behavior rose to the level of willful misconduct; nor has the government offered any evidence that Callbreath deliberately sought to place himself at extreme risk.

to all cases of injury to person or property caused by a vessel on navigable water "notwithstanding that such ... injury be done or consummated on land." 46 U.S.C. app. § 740. This argument has no merit. Callbreath concedes that he cannot recover under the AEA for jurisdictional reasons; thus, reversing the district court would have no effect on the outcome of the appeal-he would still be without a remedy under the AEA. Callbreath's vague claim that the district court's discussion of the AEA somehow manifests a lack of fairness in the proceedings is without any basis. We therefore reject Callbreath's request to reverse the district court on the basis of its analysis of the AEA.

For the foregoing reasons, the district court's order granting the government's motion for summary judgment is affirmed as to the Jones Act claim, but reversed as to the claim for maintenance and cure, and remanded for further proceedings. Costs on appeal are awarded to appellant.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

RAWLINSON, Circuit Judge, Dissenting.

I respectfully dissent.

Edwin Callbreath was en route to his ship with a female companion when he was injured. It was late evening, and Callbreath was not returning for work purposes. Rather than accessing the ship from the designated entrance, Callbreath elected to cross a railyard by crawling under a train. Unfortunately, the train began to move while Callbreath was underneath.

The majority concludes that Callbreath's employer "knew or should have known" that crew members regularly used the railyard shortcut. From that conclusion, the majority leaps to its holding that a material issue of fact exists regarding whether Callbreath was acting within the scope of his employment. The majority cites the cases of *Bountiful Brick Co. v. Giles*, 276 U.S. 154, 158-59, 48 S.Ct. 221, 72 L.Ed. 507 (1928) and *Marceau v. Great Lakes Transit Corp.*, 146 F.2d 416, 418 (2nd Cir. 1945) in support of its holding. However, those cases are easily distinguished. In *Bountiful Brick*, the employee was found to be in the scope of employment because he was injured while traversing "the only way of access" to his employment. See *Bountiful Brick*, 276 U.S. at 159.

In *Marceau*, the court noted that the injured employee "was acting under orders when he returned to the ship" and "suffered his injuries while on property in the possession and under the control of the defendant ... and over which the plaintiff had to pass in order to return to his work."

The facts in *Bountiful Brick* and *Marceau* are in stark contrast to the facts in this case. Marceau was returning to the ship under orders. Callbreath was not. Marceau suffered his injury while on property under control of the Defendant. Callbreath did not. Both Giles (in *Bountiful Brick*) and Marceau were required to use the route which caused their injuries. Callbreath was not. The cases cited by the majority simply do not support its ruling.

The majority, without citing any supporting authority, also refers to Callbreath's "ongoing presence on board" the ship and the furtherance of some ephemeral "vital government interest in staffing and maintaining the ship." There is no support in the record for the premise that Callbreath's residing on board the ship served a "vital government interest." In fact, the evidence in the record reflects that Callbreath was the only crew member who lived aboard the ship. Any government interest served by having a sole crew

member living aboard is slight, at best. In any event, no material issue of fact was raised on the scope of employment issue in light of the record evidence. Accordingly, I would affirm the district court.