COURT OF APPEALS OF VIRGINIA


Present:     Chief Judge Fitzpatrick, Judges Benton and McClanahan
Argued at Alexandria, Virginia


DONNA CLEVELAND
                                                            OPINION BY
v.        Record No. 2615-03-4          CHIEF JUDGE JOHANNA L. FITZPATRICK
                                                       AUGUST 3, 2004
FOOD LION, LLC #0578 AND
 RISK MANAGEMENT SERVICES, INC.


             FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            James E. Swiger (Swiger & Cay, on brief), for appellant.

            P. Jason Cording (William B. Pierce; William B. Pierce &
            Associates, PLLC, on brief), for appellees.


       Donna Cleveland (claimant) contends the Workers' Compensation Commission

(commission) erred in finding that her accident of June 5, 2002 did not arise out of her

employment with Food Lion (employer).  Finding no error, we affirm the commission's decision.

## I.  FACTS

       We view the evidence in the light most favorable to the employer, who prevailed below.

See Westmoreland Coal v. Russell, 31 Va. App. 16, 20, 520 S.E.2d 839, 841 (1999).  The

commission's factual findings are conclusive and binding on this Court when those findings are

based on credible evidence.  See James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382

S.E.2d 487, 488 (1989), and Code § 65.2-706.

Employer was one of five stores located in a strip mall that used a common parking area.[1] Employer was not responsible for the maintenance of the lot, but did collect shopping carts from several "corrals" or collection points located in the lot. Each corral occupied an area approximately the size of one parking place. Employees did not have a designated place to park and were allowed to park anywhere in the lot. They were asked to leave the spaces near the store for customer use. The parking lot was separated from the stores in the strip mall by traffic lanes that allowed ingress and egress for all the stores. A storm drain surrounded by concrete was embedded in the asphalt of the parking lot at the edge of the traffic lanes and at the end of the aisle between rows of parking places.

On June 5, 2002, claimant, a front-end worker for employer, parked her car in the parking lot and walked toward the store entrance to begin her shift. As she neared the store, it began to rain and she ran toward the store. As she started to cross the traffic lane in front of the store, she tripped on gravel surrounding the storm drainage grate and injured her knee. The extent of her injuries and her period of disability are not at issue in this appeal.

---

[1] Article 7(A) of the employer's lease states in pertinent part:

> Parking and Common Area. Landlord hereby dedicates and grants to Tenant, its employees, agents, suppliers, customers and invitees a non-exclusive right to use, . . . all the Common Area. The Common Area shall be used for parking and for ingress and egress between the Demised Premises and all other areas of the Shopping Center and the adjoining streets, alleys and sidewalks. . . . 1. Parking Area. . . . Landlord covenants and agrees at all times during the Lease Term to provide and maintain a surfaced parking area. . . . 2. Common Area, In General. . . . Landlord covenants and agrees to operate and maintain in good condition all of the Common Area, and to provide all reasonable services therefore, including, without limitation, safeguarding, cleaning and sweeping, snow and ice removal, lighting, landscaping, general repair and maintenance, repainting, striping, watering and maintenance of the Common Area.

The deputy commissioner found that:

> the conditions of the lot in conjunction with the claimant's hastening as a result of the weather caused her injury. Nonetheless, she was in an area that was available to the customers and employees of all the tenants of the shopping center. This area cannot reasonably be considered an extension of the employer's premises.

Claimant appealed to the commission, and they agreed:

> [Claimant] fell as she was about to enter a traffic lane in the parking lot. The lot was provided for the use of employees and customers of at least five stores. At the time of her fall, she was a considerable distance from any of the stores. On the facts of this case, we find that the site of injury by accident was not in such close proximity to the building that it was "in effect" a part of the employer's premises.

Claimant appealed that decision.

## II.

Appellant contends the commission erred in finding her accident did not arise out of her employment. She argues that the parking lot was part of the employer's premises for the purpose of Workers' Compensation Act coverage. Credible evidence supports the commission's finding that the parking lot was not part of the employer's "extended premises."

The question of "[w]hether an accident arises out of the employment is a mixed question of law and fact and is reviewable by the appellate court." Plumb Rite Plumbing Service v. Barbour, 8 Va. App. 482, 483, 382 S.E.2d 305, 305 (1989). An injury arises out of the employment where "[t]here is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938).

> As a general rule, "an employee going to or from the place where [her] work is to be performed is not engaged in performing any service growing out of and incidental to [her] employment."

- 3 -

> Kendrick v. Nationwide Homes, Inc., 4 Va. App. 189, 190, 355
> S.E.2d 347, 347 (1987) (quoting Boyd's Roofing Co. v. Lewis, 1
> Va. App. 93, 94, 335 S.E.2d 281, 282 (1985)).  Thus, an injury
> sustained while traveling to or from work is generally not
> compensable.  Id. at 190-91, 355 S.E.2d at 347.  An accidental
> injury sustained when the employee is "going to" work does not
> arise "in the course of" the employment simply because the
> employee at that time and place is not yet "on the job."  There are,
> however, three exceptions to this rule:  (1) where the means of
> transportation used to go to and from work is provided by the
> employer or the employee's travel time is paid for or included in
> wages; (2) where the way used is the sole means of ingress and
> egress or is constructed by the employer; and (3) where the
> employee is charged with some duty or task connected to his
> employment while on his way to or from work.  Id. at 191, 355
> S.E.2d at 347-48.

Sentara Leigh Hospital v. Nichols, 13 Va. App. 630, 636, 414 S.E.2d 426, 429 (1992).  See also

Blaustein v. Mitre Corporation, 36 Va. App. 344, 550 S.E.2d 336 (2001), and Kendrick, 4

Va. App. 189, 355 S.E.2d 347.

The determination that a parking lot, neither owned nor controlled by employer, is part of

the employer's "extended premises" rests on a combination of criteria, including but not limited

to proximity, authority, and responsibility for maintenance.  However, like the commission, we

agree that the rationale of Hunton & Williams v. Gilmer, 20 Va. App. 603, 460 S.E.2d 235

(1995), controls the outcome of the instant case and excludes claimant from coverage.  Gilmer

was allowed, but not required, to park in a garage across the street from her employer, and the

cost of the parking was deducted from her wages.  We held on those facts that "no evidence

showed that [employer's] employees were required to park in the [bank] parking garage or that

Gilmer sustained her injury in an area of the parking lot reserved for [employer's] employees

only.  Thus, . . . no evidence disclosed any control or authority by [employer] over the area in

which Gilmer parked."  Id. at 607-08, 460 S.E.2d at 237.

In reversing the commission's award of compensation to Gilmer, we distinguished

Barnes v. Stokes, 233 Va. 249, 355 S.E.2d 330 (1987), relied on by claimant in this case.  We

- 4 -

noted that "[t]he Court extended the exception to the general rule of 'going and coming' to cover a section of a parking lot that was neither owned nor maintained by the employer, but was used *exclusively, at the employer's direction*, by the employees . . . ." Gilmer, 20 Va. App. at 606, 460 S.E.2d at 236 (emphasis added). Thus, the situs of Barnes' injury was deemed controlling because "the parking area in which Barnes was injured was a designated area reserved for the employer's employees only." Id. at 607, 460 S.E.2d at 237.

In Barnes, the employer controlled the use of the parking area. Food Lion did not. In Barnes the employer was, by lease, given a specific area large enough to accommodate its entire staff at that location and required its employees to park in that area. Food Lion was not allocated a specific area and did not control where its employees parked. In Barnes, the measure of control over the employees' method of ingress and egress was determined by the employer. By specifically designating an area "employee parking" and requiring its employees to park there, an employer is making that area part of its "extended premises" through its control of the use of that area by its employees.

Here, as in Gilmer, employees were allowed, but not required to park in the lot. The general public used the lot, and it was neither controlled nor maintained by employer. Claimant was injured in a common area on the other side of a traffic lane used by all tenants and customers of the shopping center. In the instant case, the claimant's route from her car to the location of the accident was the same as that of any member of the public. The common area was not "an essential means of ingress and egress from the public right-of-way." It is undisputed that claimant was on her way to work when the accident occurred and the "extended premises" exception to the "going and coming" rule is not applicable in this situation. The evidence failed to prove that the traffic lane from the parking lot to the store was the "extended premises" of employer.

Lastly, claimant relies on Prince v. Pan American World Airways, 6 Va. App. 268, 568 S.E.2d 96 (1988), to support her claim.  This reliance is misplaced.  Prince was injured on a sidewalk approximately five feet from the building's entrance where the employees were funneled into the door.  Id. at 270, 368 S.E.2d at 97.  On those facts, we held that:

> the walkway was a common avenue of passage over the grounds and an essential means of ingress and egress from the public right-of-way to Pan Am's place of business.  As such, it constituted the premises of another in such proximity and relation as to be in practical effect a part of the employer's premises.

Id. at 274, 368 S.E.2d at 98 (internal quotations and citations omitted).  In the instant case, the traffic lane or parking lot is not the equivalent of the sidewalk entry adjacent to a workplace which made it in "practical effect" a part of employer's premises.

Thus, credible evidence supports the commission's finding that claimant's injury did not arise out of her employment.  The decision of the commission is affirmed.

Affirmed.

Benton, J., dissenting.

The principle is long standing "that the words 'arising out of and in the course of the employment' should receive a liberal construction in order to carry out the humane and beneficent purposes of the act."  Bradshaw v. Aronovitch, 170 Va. 329, 336, 196 S.E. 684, 686 (1938).  Equally well established is the following definitional test:

> [A]n injury "arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury.  Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment."

Id. at 335, 196 S.E. at 686 (citation omitted).  These fundamental principles underlie the Supreme Court's decisions in Barnes v. Stokes, 233 Va. 249, 355 S.E.2d 330 (1987), and Brown v. Reed, 209 Va. 562, 165 S.E.2d 394 (1969), which I believe control this case.  In both of those cases, the Supreme Court ruled that employees, who were going to work, suffered injuries arising out of and in the course of their employment when they were injured on a parking lot provided by their employers for the convenience of the employees.

In Barnes, the employer's offices were located in a building next to a very large parking lot, which was not owned or maintained by the employer.  233 Va. at 250-51, 355 S.E.2d at 330-31.  The employer, however, had been allocated a number of spaces on the parking lot sufficient for its employees "and was 'specifically requested' to require its employees to park their vehicles in the designated area."  233 Va. at 251, 355 S.E.2d at 331.  The Supreme Court held that an employee suffered an injury that arose out of and in the course of employment when she was struck by a motor vehicle as she walked across the parking lot after leaving work.  Id. at

253, 355 S.E.2d at 332. Holding that the injury was causally related to the employment, the Court noted the following:

> In the present case, while the situs of injury was not on property owned or maintained by [the] employer, nevertheless it was on premises of another that were in such proximity and relation to the space leased by the employer as to be in practical effect the employer's premises. Even though the evidence showed that members of the public who were visiting other tenants in the office building could park randomly on the lot in question, the accident sued upon occurred in the area specifically allocated to the employer and at the place where the employees were required to park their vehicles.

Id. at 252-53, 355 S.E.2d at 332.

The Barnes decision devolves in substantial part from the Supreme Court's earlier decision in Brown, where an employee was struck by a car while walking across the parking lot to the place where he was required to punch the time clock before beginning his work shift. 209 Va. at 563, 165 S.E.2d at 395. Holding that the employee's injury in the parking lot arose out of and in the course of employment, the Court noted the causal connection between the injury and the employment conditions. Specifically, the Court ruled that the provision of on-site parking is a valuable fringe benefit of employment because "[i]t cuts down on absenteeism, enables employees to report to work on time, and makes employment at a particular company more attractive." Id. at 566, 165 S.E.2d at 398. This benefit obviously is provided by the employer with the expectation its employees will take advantage of it.

The Supreme Court succinctly explained the rationale for these decisions as follows:

> In both Brown and Barnes, [the Court] relied on the rationale of Bountiful Brick Co. v. Giles, 276 U.S. 154 (1928), to determine whether the accidents arose out of and in the course of the employment. [There] . . . , the United States Supreme Court stated that

> [An employee's] employment includes not only the actual doing of the work, but a *reasonable margin of time and space* necessary to be used in passing to and from the place where the work is to be

done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, *or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises*, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words, the *employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached*.

Painter v. Simmons, 238 Va. 196, 198-99, 380 S.E.2d 663, 665 (1989).[2]

----

[2] "This rule is by no means confined to parking lots owned, controlled, or maintained by the employer." Larson's Workers' Compensation Law, § 13.04(2)(a) (2004). Thus, for example, the Ohio Court of Appeals further explained the rationale as follows:

It would be impractical and illogical to apply this principle [that an area cannot be a part of the employer's premises if he does not have control over it] to a shopping plaza consisting of multiple independent businesses, each of which would have to be an owner in common with all the other tenants in order to share a nebulous control over its geographical confines and simulate a joint zone of employment. Such concept is too narrow and restrictive and is as outmoded as holding that an accident sustained by an employee going to or leaving work by means of an elevator or stairway in a building shared in common by different tenants, did not occur in the course of or arise out of the employment because the elevator or stairway was not part of the premises over which the employee's particular employer exercised any control at the time and place of the accident.

In contrast, the control of the premises test in this case should be viewed in the light of the control the employer has over claimant's work activities in the employment environment and whether such activities were reasonably incidental to and part of the necessary obligations of his job. It is of great significance that appellant's employer, . . . , was an inseparable business component of the shopping center environment in which the injury occurred. The employment environment, which should be an important test of control, extended constructively from the actual premises of the [employer's] store to and included the parking area of the shopping center.

\* \* \* \* \* \* \*

In the instant case, the parking area was appellant's normal and customary means to and from his employer's premises to which

In the case we decide today, the record proved that Food Lion provided free parking to its employees in the lot adjacent to its store both for Food Lion's convenience and as a fringe benefit for its employees.  See Brown, 209 Va. at 566, 165 S.E.2d at 398.  See also Berry v. B. Gertz, Inc., 21 A.D.2d 708, 709 (N.Y. App. Div. 1964) (noting that the employees' use of the parking facilities "'furthered the interests of their respective employers and the accident having occurred within the parking area . . . was a reasonable incident of the employment, and arose out of and in the course thereof'").  As the Supreme Court instructs in Barnes, in determining whether the Act applies when this type of benefit is provided, the issue of who owns or maintains the parking lot is not dispositive.  233 Va. at 251, 355 S.E.2d at 331.  See also De Hoyos v. Industrial Comm'n, 185 N.E.2d 885, 887 (Ill. 1962) (holding that "whether the employer owns or does not own the parking lot is immaterial so long as the employer has provided the parking lot for its employees"); Wells v. Brown, 33 S.W.3d 190, 192-93 (Mo. 2000) (holding that an employee's injury was compensable where the employee was injured in a parking lot that the employer invited its employees to use and where the employee fell while on a customary and acceptable route to work).  Rather, the more significant issue is whether the employer provides to

_____

> such passageway was an indispensable appurtenance.  In reality, the employer and the other tenants of the . . . Shopping Center, having reciprocal rental rights and privileges, were also accorded the common use and access of the parking area.  Logically, to that extent, this was tantamount to an essential expansion of their respective premises for the purpose of adequately serving and furthering their business interests.  It follows that the appellant-employee, as well as the employees of the other tenants, derived their similar rights and privileges from the shopping center by virtue of a vested privity in the objectives of their employers.  The conditions and environments of the employment exposed appellant to the special hazards created by the trafficking of trucks and automobiles in the parking area from which his injury resulted.

Frishkorn v. Flowers, 270 N.E.2d 366, 368-69 (Ohio Ct. App. 1971).

its employees parking as a fringe benefit and whether the employee was at a place where the employer expected the employee to be for employment purposes.

In short, the evidence proved that Donna Cleveland had parked, as she was required by Food Lion, in one of the spaces on the parking lot away from the front of the store. See Wells, 33 S.W.3d at 192 (ruling that the injury was compensable where the employer "request[ed] that his employees park in the perimeter of the lot (to save the closer parking for [customers]")). Cleveland was crossing the parking lot to enter her employment at Food Lion when she slipped on gravel in a depressed area near the storm sewer and injured her leg. She suffered her injury while traversing the area directly between the approved parking area supplied by Food Lion to its employees and the front door of the Food Lion store. Apropos this case, the Court in Brown, quoted with approval the following circumstance:

> "The parking facilities were furnished by the employer for the use of the claimant employee and were furnished as an incident of employment. Where an employer furnishes an employee parking facilities on the employer's premises, it is, of course, necessary for the employee, before he can commence his actual employment duties, to park his automobile and walk from that portion of the employer's premises to that other portion of the premises where he performs his actual employment duties . . . . In the instant case it cannot be said that in proceeding from that portion of the premises where she parked, to her immediate work area and in returning therefrom, the claimant was on a purely personal mission. We think that going to and from the parking lot in order to reach and leave her immediate working area was a necessary incident to the claimant's employment."

Brown, 209 Va. at 567, 165 S.E.2d at 398-99 (citation omitted). Cf. Fouts v. Anderson, 219 Va. 666, 670, 250 S.E.2d 746, 748 (1979) (holding that no causal connection existed between the workplace and the injury when employee left the parking lot at the completion of his workday and returned to the lot on a personal mission).

In Cleveland's case, as in Barnes, "while the situs of [the] injury was not on property owned or maintained by [the] employer, nevertheless it was on premises of another that were in

such proximity and relation to the space leased by the employer as to be in practical effect the employer's premises." 233 Va. at 252, 355 S.E.2d at 332. Therefore, the significant factor in this case is the same as the Court reiterated in Barnes:

> if an employee sustains an injury while passing, with the express or implied consent of the employer, to or from his or her work by a way over the employer's premises, "or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises," the injury is as causally related to the employment as if it had been sustained while the employee was engaged in work at the place of its performance.

233 Va. at 252, 355 S.E.2d at 331 (citation omitted). See also Prince v. Pan Am-World Airways, 6 Va. App. 268, 274, 368 S.E.2d 96, 98 (1988) (injury is causally related if it occurs on a walkway that "constituted the premises 'of another in such proximity and relation as to be in practical effect a part of the employer's premises'").

Without any analysis of Barnes or Brown, the commission ruled that our decision in Hunton & Williams v. Gilmer, 20 Va. App. 603, 460 S.E.2d 235 (1995), controls the disposition of this case. In Gilmer, however, the employee paid to park in a parking garage owned by the employer's lessor. 20 Va. App. at 604-05, 460 S.E.2d at 235. Negating any inference that the employer provided parking to its employees, the record proved that the employer's status as a tenant did not entitle the employee to a discounted parking fee and, furthermore, that the employer did not subsidize the parking for its employees. Id. at 605, 460 S.E.2d at 236. We also noted that no evidence proved the employee was restricted to or from parking in particular areas of the garage because of her employment status. Id. Although the lessor required the employer to collect the parking fee from the employee and "pay by one check for the parking of all its employees who park in [the] garage," id., that arrangement was merely for the convenience of the lessor and the employee. It was not a fringe benefit bestowed upon the employee by the employer. Thus, we held that the arrangement was a mere convenience for the employees and

was not the type of valuable fringe benefit bestowed upon the employee by the employer which would bring them within the circumstances described in Barnes and Brown.  See Gilmer, 20 Va. App. at 608, 460 S.E.2d at 237.

For these reasons, I agree with the dissenting commissioner that the employee "necessarily was required to cross the traffic lane to access the store [from her parking space], and her 'presence [in the traffic lane], therefore, was required and expected by virtue of her employment.'"  I would hold, therefore, that Cleveland's injury arose out of and in the course of her employment.  Accordingly, I would reverse the order and remand for an award in Cleveland's favor.