## Richmond

GEORGE HAYWOOD BROWN v. IRVIN M. REED.

January 20, 1969.

Record No. 6826.

Present, All the Justices.

*Paul Whitehead* for plaintiff in error.

*S. J. Thompson, Jr.* (*James O. Watts, III; D. L. Manson; Caskie, Frost, Davidson & Hobbs*, on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

Plaintiff, George Haywood Brown, and defendant, Irvin M. Reed, were fellow employees of the Lynchburg Foundry Company in Lynchburg, Virginia. The company carries workmen's compensation insurance, and the parties were covered under the Workmen's Compensation Act. The Foundry maintains upon its premises a company parking lot for the convenience of its employees and also provides for them a shower and locker room.

On the morning of October 28, 1966, Brown came to the Foundry with the intent to "punch in" for the day shift which began work at 7 A. M. He parked in the lot, went to the locker room, changed clothes and started back across the parking area en route to the machine shop where he would punch the time clock, thereby beginning his workday and his pay. Brown was struck and injured by Reed's automobile as he was walking in the passageway between the spaces in the parking area.

Reed worked the night shift and on the day of the accident stopped work at 6 A. M. He punched the time clock, thereby stopping his pay, left the building and went to the locker room where he showered and changed to street clothes. He then proceeded to the parking area, got into his automobile and was backing it preliminary to turning around and picking up some other employees who rode with him. It was during the course of this backing maneuver that he struck and injured plaintiff.

Brown brought his motion for judgment against Reed for damages, alleging negligence in the operation of defendant's vehicle. Defendant filed a plea alleging that plaintiff is barred from proceeding in this action because the accident arose out of and in the course of their employment and that plaintiff's exclusive remedy is under the Virginia Workmen's Compensation Act. The trial court sustained the plea and dismissed plaintiff's action. We granted a writ of error.

The narrow question for our determination is whether plaintiff's common law action against defendant is barred by the provisions of the Virginia Workmen's Compensation Act. The pertinent sections are:

"§ 65.1-103. Duty to insure payment of compensation; effect of insurance.—Every employer subject to the compensation provisions of this Act shall insure the payment of compensation to his employees in the manner hereinafter provided. While such insurance remains in force he or those conducting his business shall only be liable to an employee for personal injury or death by accident to the extent and in the manner herein specified.

"§ 65.1-40. Employee's rights under Act exclude all others.— The rights and remedies herein granted to an employee when he and his employer have accepted the provisions of this Act respectively to pay and accept compensation on account of personal injury or death by accident shall exclude all other rights and

remedies of such employee, his personal representative, parents, dependents or next of kin, at common law or otherwise, on account of such injury, loss of service or death."

Defendant says that plaintiff's injury is one arising out of and in the course of his employment caused by the alleged negligence of a fellow employee who was also acting at the time in the course of his employment.

Brown concedes that since he was in the act of reporting for work, and not on a mission purely personal to himself, he could be held as covered by the provisions of the Workmen's Compensation Act. However, plaintiff further contends that at the time of the accident defendant was on the premises of the Foundry solely for his own benefit, and not in pursuance of any demand of his employment.

We have held repeatedly that the words of the statute "arising out of and in the course of the employment" should be liberally construed to carry out the humane and beneficent purpose of the Workmen's Compensation Act; that the expressions are used conjunctively and are not synonymous; that both conditions must be present before compensation can be awarded; that the words "arising out of" have been construed to refer to the origin or cause of the injury, and the words "in the course of" refer to the time, place and circumstances under which the accident occurred; and that an accident occurs in the "course of employment" when it takes place within the period of employment, at a place where the employee may be reasonably expected to be, and while he is reasonably fulfilling the duties of his employment or is doing something which is reasonably incident thereto. *Conner v. Bragg*, 203 Va. 204, 123 S. E. 2d 393 (1962); *Reserve Life Ins. Co. v. Hosey*, 208 Va. 568, 159 S. E. 2d 633 (1968).

As a guide in determining whether an accident arises "out of" the employment, we cite the definition and test stated in *In Re McNicol*, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306 (1913) that an injury arises out of the employment "when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury".

We apply these well-established principles to the instant case. The time, location and circumstances of the accident place plaintiff and defendant in similar, but reverse, positions with respect to their em-

ployment. Plaintiff, en route to work, had parked his vehicle in a lot provided by his employer for that purpose. He had proceeded to a locker room, likewise provided by his employer, changed clothes, and was moving from the locker room across the parking area with intention to punch a time clock and begin his day's work.

Defendant was doing all of that in reverse. He had completed his day's work, punched the time clock, and proceeded to the locker room where he changed clothes. He then went to his vehicle and, preliminary to leaving the parking area, was backing his vehicle when he struck plaintiff. Thus if plaintiff was within the course of his employment at the time of the collision, so was defendant.

We cannot agree with the theory of plaintiff that defendant was on the premises solely for the latter's benefit. There is no such thing as "instantaneous exit" immediately an employee punches a time clock. Manifestly an employee has a reasonable time after quitting work in which to absent himself from the premises of his employer.

Applicable to the present situation is the following from *Bountiful Brick Co. v. Giles,* 276 U. S. 154, 158, 48 Sup. Ct. 221, 222, 66 A. L. R. 1402, 1404 (1928):

> "And employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words, the employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached."

In *Williams* v. *South Carolina State Hospital,* 245 S. C. 377, 381, 382, 140 S. E. 2d 601, 603 (1965), it was said:

> "The fact that the accident occurred shortly after the claimant had left her immediate place of work is not conclusive. A reasonable length of time must be given an employee to separate himself or herself from the place of work. The employment

contemplated her entry upon and departure from the place of work as much as it contemplated her working there, and must include a reasonable interval of time for that purpose. . . .

"The claimant parked her automobile on the premises of her employer in a parking area designated and maintained for employees in her classification to use. It is reasonably inferable from the record that the parking area was maintained by the employer for the mutual benefit of the employer and the employees."

There is no evidence in this record that defendant unduly or unreasonably delayed his departure from the Foundry after quitting work. The shower and lockers are for the convenience and health of the employees. They constitute a valuable fringe benefit which employees are encouraged to use, and promote good public relations. A company parking lot is likewise a valuable fringe benefit and an advantage to both the employer and the employee. It cuts down on absenteeism, enables employees to report to work on time, and makes employment at a particular company more attractive.

*Harless* v. *Flynn*, 1 N.C. App. 448, 162 S. E. 2d 47 (1968) involved an accident which occurred between fellow employees in a company parking lot. Recovery in a common law action by plaintiff was denied on the ground that the provisions of the Workmen's Compensation Act provided the exclusive remedy. The court held that the accident arose out of and in the course of the plaintiff's employment. In commenting on the risk incident to the maintenance of a company parking lot for the benefit of employees, the court said:

"The plaintiff here was injured in a collision between two automobiles operated by fellow employees in the company parking lot. Is the hazard, or risk, of injury under such circumstances one that is peculiar to the employment? The risk of injury in automobile mishaps is one that is obviously common to the public at large. . . . Yet, where large numbers of employees drive automobiles to their places of employment and provision is made for parking on the employer's premises, it is clear that the employment itself has created conditions in which the risk of automobile-connected injuries is different in kind and possibly greater in degree than that confronted by the public at large. The risk may be increased by a large number of automobiles, concentrated in a confined space, coming into and going out of the lot at approximately the same times, operated by employees who may be preoccupied with

thoughts of work to be begun, or exhausted from work completed and anxious to get to their respective homes or other places of relaxation and refreshment. . . . This would seem to be the kind of hazard from which the Workmen's Compensation Act was designed to protect employees. 'The philosophy which supports the Workmen's Compensation Act is that the wear and tear of human beings in modern industry should be charged to the industry, just as the wear and tear of machinery has always been charged.' [Citing case.] It clearly appears that plaintiff was injured by accident *arising out of* her employment.

"If, as alleged in the plaintiff's complaint, her injury was due to the negligence of the defendant, the above conclusion is bolstered by that fact. 'An injury suffered by an employee while engaged in his master's business within the scope of his employment proximately resulting from the negligence of fellow employees is, as to the employee, an 'accident' arising out of and in the course of his employment.' [Citing case.]" 1 N.C. App. 448, at pp. 459-60, 162 S. E. 2d 47, at p. 55.

Numerous other cases holding that injuries sustained in automobile mishaps in company parking lots arise out of employment are cited in *Harless* v. *Flynn, supra.*

In *Federal Insurance Company* v. *Coram*, 95 Ga. App. 622, 623, 624, 98 S. E. 2d 214, 215 (1957), it was said:

"The finding that the accident arose out of and in the course of employment was authorized. The parking facilities were furnished by the employer for the use of the claimant employee and were furnished as an incident of employment. Where an employer furnishes an employee parking facilities on the employer's premises, it is, of course, necessary for the employee, before he can commence his actual employment duties, to park his automobile and walk from that portion of the employer's premises to that other portion of the premises where he performs his actual employment duties. . . . In the instant case it cannot be said that in proceeding from that portion of the premises where she parked, to her immediate work area and in returning therefrom, the claimant was on a purely personal mission. We think that going to and from the parking lot in order to reach and leave her immediate working area was a necessary incident to the claimant's employment."

Counsel makes a point of the fact that plaintiff was struck while crossing a road adjacent to the parking spaces. The road in question is in fact a private road or passageway which not only separates parking spaces in the company parking area, but also separates the Foundry shops, located on the north side of the passageway and parking area, from the locker and shower rooms and plant office building, located on the south side. Of necessity the entire parking area and the road or passageway which separates the company buildings are used by employees of the company and others having business on the premises.

In Larson, The Law of Workmen's Compensation, Vol. I, p. 208 (1966), it is written:

"One category in which compensation is almost always awarded is that in which the employee travels along or across a public road between two portions of his employer's premises, whether going and coming, or pursuing his active duties."

The accident occurred at a place where, from the nature of the work, both Brown and Reed were reasonably expected to be. The parking lot and the locker room are provided for employees with the intent that they be used. The time of their most intense and hazardous use would be when there was a change of work shifts. Brown and Reed were doing exactly what their employer had anticipated they would do. They were using the parking area and its passageway, and each had just used the locker room. Both were using the facilities at precisely the proper time they were supposed to use them—just before reporting to work and just after finishing work.

The accident sustained by plaintiff arose out of and in the course of his employment. It allegedly was caused by the negligence of a fellow employee who at the time was acting within the course of his employment. Plaintiff's rights and remedies here are exclusively those provided under the Virginia Workmen's Compensation Act.

Accordingly, the judgment of the trial court is

*Affirmed.*