COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Humphreys and Senior Judge Hodges
Argued at Richmond, Virginia


BARBARA H. CAMPBELL

                                              MEMORANDUM OPINION* BY
v.        Record No. 3156-03-2            JUDGE ROBERT J. HUMPHREYS
                                                    JULY 27, 2004
FOOD LION LLC, #835 AND
 RISK MANAGEMENT SERVICES, INC.


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Robert L. Flax (Flax & Stout, on brief), for appellant.

          P. Jason Cording (William B. Pierce; William B. Pierce &
          Associates, PLLC, on brief), for appellees.


     Barbara H. Campbell appeals a decision of the Workers' Compensation Commission

denying her claim for benefits.  Specifically, Campbell contends the commission erred in failing

to find that her injury arose out of and in the course of her employment.  For the reasons that

follow, we affirm the decision of the commission.

     We first note it is well established on appeal that we consider the evidence in the light

most favorable to the party prevailing below - in this case, Food Lion LLC, #835 and Risk

Management Services, Inc. (collectively "Food Lion").  States Roofing Corp. v. Bush Constr.

Corp., 15 Va. App. 613, 616, 426 S.E.2d 124, 126 (1993).

     So viewed, the evidence established that on February 1, 2000, Campbell was employed

with Food Lion, performing duties such as cake decorating, bread cutting and re-stocking.  The

store was located in Glen Eagle Shopping Center.  When Campbell arrived at work that day, she

---

          * Pursuant to Code § 17.1-413, this opinion is not designated for publication.  Moreover,
as this opinion has no precedential value, we recite only those facts necessary to our holding.

parked in the shopping center parking lot on a "slanted hill" that was "about a football field['s]" distance away from the entrance to the Food Lion store. Campbell parked away from the entrance to the store because managers had "asked" the employees not to park too close to the store and to "park up on the hill like that."

By about 2:00 p.m., Campbell had not yet had lunch, but was able to take a ten-minute break. Campbell did not "clock[] out" for that break. She bought "some bread and some lunch meat" and walked outside to her car. The parking lot was covered with some "lumpy ice," but in sections, the "pavement just looked like wet rain water." As Campbell reached to open her car door, her left "leg slipped out on [her]." All of her "weight went down" on her right knee. Although Campbell's knee was "numb" and "bleeding," she returned to work and finished her shift. Approximately one year later, on March 26, 2001, Campbell filed an accident report with Food Lion claiming an injury to her right knee and leg. Campbell subsequently filed a claim for benefits with the commission.

After a hearing, the deputy commissioner held that Campbell failed to "satisfy her burden to prove that she sustained a compensable injury by accident." Specifically, he found that Campbell failed to prove her injury arose out of and in the course of her employment because: 1) the evidence established Campbell was not "engaged in performing any work for the employer" at the time of her fall; and 2) the extended premises doctrine did not apply because the "parking lot was neither owned [n]or maintained by the employer" and Campbell testified that she could park anywhere in the lot, "although the employer requested that she not park directly in front of the store." On review, the full commission affirmed.

On appeal, Campbell contends the commission erred in determining that the extended premises and "personal comfort break" doctrines do not apply to her claim. We disagree.

"A finding by the commission that an injury arose out of and in the course of employment is a mixed question of law and fact and is properly reviewable on appeal." Wetzel's Painting & Wallpapering v. Price, 19 Va. App. 158, 160, 449 S.E.2d 500, 501 (1994). Further, factual findings made by the "commission that are supported by credible evidence are conclusive and binding upon this Court on appeal." So. Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993). Indeed, "[t]he commission's findings, if supported by credible evidence or reasonable inferences drawn from the evidence, will not be disturbed upon review, even though the record may contain evidence to support a contrary finding." Estate of Kiser v. Pulaski Furniture Co., 41 Va. App. 293, 297-98, 584 S.E.2d 464, 467 (2003). Moreover, it is the claimant's burden to prove that his or her injury arose out of and in the course of the employment. See Winegar v. International Telephone & Telegraph, 1 Va. App. 260, 261, 337 S.E.2d 760, 760 (1985).

"The language 'arising out of' refers to the origin or cause of the injury while the language 'in the course of' refers to the time, place, and circumstances under which the accident occurred." Briley v. Farm Fresh, Inc., 240 Va. 194, 197, 396 S.E.2d 835, 836-37 (1990). "An accident occurs during the course of the employment if it takes place within the period of employment, at a place where the employee may reasonably be expected to be, and while the employee is reasonably fulfilling the duties of the employment or is doing something reasonably incidental to it." Id.

> As a general rule, "an employee going to or from the place where his work is to be performed is not engaged in performing any service growing out of and incidental to his employment." Boyd's Roofing Co., Inc. v. Lewis, 1 Va. App. 93, 94, 335 S.E.2d 281, 282 (1985) (quoting Kent v. Virginia-Carolina Chem. Co., 143 Va. 62, 66, 129 S.E. 330, 332 (1925)). Thus, an injury incurred while

going to or from work is generally not compensable. However, several exceptions to the general rule have been recognized.

Wetzel's, 19 Va. App. at 160, 449 S.E.2d at 501.[1]

> The three exceptions to the "going to and from work" rule are: (1) when the means of transportation is provided by the employer or the time consumed is paid for or included in the employee's wages; (2) when the way used is the sole and exclusive way of ingress and egress with no other way, or where the way of ingress and egress is constructed by the employer; and (3) when the employee on his or her way to or from work is still charged with some duty or task in connection with the employment. [Kent, 143 Va. at 66, 129 S.E. at 332].

Ramey v. Bobbitt, 250 Va. 474, 478 n.1, 463 S.E.2d 437, 440 n.1 (1995). Campbell conceded during the hearing that, at the time of her fall, she was not "doing anything associated with work." Thus, she contends, essentially, that the parking lot is an extension of Food Lion's premises, because it is necessary for employer's employees to use the lot. Campbell, therefore, argues the parking lot is analogous to the "exclusive way of ingress and egress."

As stated above, the Supreme Court of Virginia has held:

> [E]mployment includes not only the actual performance of the work, but also "a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done." [Brown v. Reed, 209 Va. 562, 565, 165 S.E.2d 394, 397 (1969)] (internal quotation marks omitted). Apropos this case and again quoting from Giles, we stated that if an employee sustains an injury while passing, with the express or implied consent of the employer, to or from his or her work by a way over the employer's

---

[1] We have found that principles applicable to going "to and from" the workplace are also applicable to the journey to and from a lunch break.

> "[W]hen the employee has a definite place and time of work, and the time of work does not include the lunch hour, the trip away from and back to the premises for the purpose of getting lunch is indistinguishable in principle from the trip at the beginning and end of the work day."

Prince v. Pan American Airways, 6 Va. App. 268, 272, 368 S.E.2d 96, 97 (1988) (quoting 1 A. Larson, Workmen's Compensation Law § 15.51 (1985)).

premises, "*or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises*," id., the injury is as causally related to the employment as if it had been sustained while the employee was engaged in work at the place of its performance.

Barnes v. Stokes, 233 Va. 249, 252, 355 S.E.2d 330, 331 (1987) (quoting Bountiful Brick Co. v. Giles, 276 U.S. 154, 158 (1928)) (emphasis added).

We thus review the key appellate decisions addressing parking lot accidents to determine if the parking lot adjacent to Food Lion can be considered "in practical effect a part of the employer's premises" – or, in other words, an extension of Food Lion's premises. Id. In reviewing those cases, we note the Supreme Court of Virginia has recognized that "[m]erely being in a parking lot utilized by employees is not enough to impose coverage of the Virginia Workers' Compensation Act." Painter v. Simmons, 238 Va. 196, 198, 380 S.E.2d 663, 664 (1989).

In Brown, the Supreme Court of Virginia upheld an award of benefits where the claimant was injured in a parking lot maintained by the employer and located on the employer's property. In essence, the Supreme Court of Virginia held that the employer in that case furnished the parking lot as an incident of employment. Brown, 209 Va. at 568, 165 S.E.2d at 399.

In Barnes, the claimant was struck by a car operated by a fellow employee, in a private parking lot adjacent to their place of employment. Barnes, 233 Va. at 250, 355 S.E.2d at 330. "The lot was neither owned nor maintained by the employer, but the employer was allocated a portion of the lot, which accommodated all of its employees, and directed its employees to park in the designated area." Stone v. Keister's Market & Grill, 34 Va. App. 174, 180-81, 538 S.E.2d 364, 367 (2000) (explaining Barnes, 233 Va. at 250, 355 S.E.2d at 330).

> In finding that the claim was compensable, the Supreme Court of Virginia held: 1) the injury occurred *in an area specifically allocated to the employer at a place where the employees were required to park their vehicles* and 2) the claimant's injury was

- 5 -

> sustained while she passed to her work, with the consent of the employer, over the premises of another "'in such proximity and relation as to be in practical effect a part of the employer's premises.'" Barnes, 233 Va. at 252-53, 355 S.E.2d at 331-32 (citation omitted).

Id. at 181, 538 S.E.2d at 367 (emphasis added).

In Hunton & Williams v. Gilmer, 20 Va. App. 603, 604, 460 S.E.2d 235, 235 (1995), the claimant slipped and fell on ice that accumulated in a parking garage across the street from the employer's premises. Like Food Lion, the employer did not own or maintain the parking garage. Id. "The garage was owned by the employer's landlord." Stone, 34 Va. App. at 181, 538 S.E.2d at 368 (explaining Gilmer, 20 Va. App. at 604-05, 460 S.E.2d at 235-36). "The claimant paid to park in the garage," but "[t]he employer did not require its employees to park in the garage." Id. at 181, 538 S.E.2d at 368. Further, "[n]o evidence established that the employer's workers were assigned to a particular location within the garage." Id. On those facts, this Court refused to apply the "extension of the premises" doctrine beyond the Supreme Court's holding in Barnes. Id. In so holding,

> [w]e wrote that the Barnes decision was predicated on the employer's authority and control over the location of the accident. [Gilmer, 20 Va. App. at 607-08, 460 S.E.2d at 237]. Because there was no evidence that the employer required its employees to park in the garage or that the claimant was injured in an area reserved only for the employer's workers, we found that the claimant failed to prove that the employer had any control or authority over the area in which she parked. Id.

Id.

In Ramey, the claimant was killed on a public street adjacent to the employer's premises while on the way to work. 250 Va. at 476-77, 463 S.E.2d at 439. "The employer did not provide parking for the employees, who generally parked on public streets." Stone, 34 Va. App. at 182, 538 S.E.2d at 368 (explaining Ramey, 250 Va. at 476, 463 S.E.2d at 439). "The Supreme Court

- 6 -

of Virginia held that the public street was not part of the employer's premises and it was not a place where the employer expected decedent to be for employment purposes." Id.

Thereafter, in Stone, we denied compensation where claimant was injured by an oncoming car when she was crossing a public highway in order to get from a parking lot to her employer's premises. Stone, 34 Va. App. at 177-78, 538 S.E.2d at 365-66. Employees were not permitted to park in the strip shopping center parking lot where the employer was located, and there was no on-street parking nearby. Id. at 177, 538 S.E.2d at 366. Accordingly, employees often parked in a lot directly across the highway from the employer's premises. Id. at 177-78, 538 S.E.2d at 366. The lot, however, was not owned, leased or maintained by the employer and there were no designated parking spaces for the employees. Id. We found that,

> [w]hile employees could not park on the employer's premises, they could park any other place they chose. Employer did not pay for employees' parking, did not designate parking spaces for the employees, and the lot was not used exclusively by employees. Unlike in [Brown], the parking lot was neither owned nor maintained by employer and its use was not an incident of employment. Unlike in Barnes, the accident did not occur in an area specifically allocated to employer at a place where employees were required to park.

Id. at 182, 538 S.E.2d at 368.

Similar to this line of cases, and unlike Barnes and Brown, it is clear that here, Food Lion did not possess the requisite control over the location of Campbell's fall, nor did her fall occur at a place Food Lion expected her to be for purposes of her employment. Although, under the terms of its lease, Food Lion *could have* exercised control over the maintenance of the parking lot, Food Lion did not own the parking lot, *nor did it assume primary responsibility for the maintenance of the lot*.[2] In fact, the lease merely allowed Food Lion to conduct regular

---

[2] Food Lion's lease specifically provided as follows, in relevant part:

> Landlord covenants and agrees to operate and maintain all the Common areas as herein defined, and provide therefore all such

- 7 -

maintenance of the parking lot, after the landlord, upon 30 days written notice, failed to do so. Although the lease *allowed* Food Lion to contract only for "snow and ice removal," without such prior notice, the terms of the lease clearly reflected that the landlord assumed primary responsibility for contracting for such services. Further, the testimony established that prior to Campbell's accident, the landlord, as provided for in the lease, had always done so. Thus, while the parking lot was no doubt convenient for Food Lion's employees and, therefore, valuable to Food Lion, it hardly compared to the "company parking lot" at issue in Brown. Brown, 209 Va. at 566, 165 S.E.2d at 398. For that reason, absent the conditions noted in Barnes, where the "accident sued upon occurred in the area specifically allocated to the employer and at the place where the employees were required to park their vehicles," Barnes, 233 Va. at 253, 355 S.E.2d at 332, "the Workers' Compensation Act does not apply." Gilmer, 20 Va. App. at 608, 460 S.E.2d at 237.

In the case at bar, and contrary to Barnes, Food Lion was not allocated a portion of the lot to accommodate its employees, nor did it direct or require its employees to park in any designated area (other than asking them not to park near the store entrance). In fact, Food Lion's

---

services as are reasonably required including, but without limitation, cleaning and sweeping, snow and ice removal, lighting, policing, general repair and maintenance, repainting, striping, watering and maintenance of the Common Areas. *If the Landlord after thirty (30) days of receipt of written notice from Tenant to do so, shall fail to make the repairs or perform the services described in this paragraph Tenant shall have the right to make such repairs or cause such services to be performed in its behalf . . . .* Nothing to the contrary withstanding, Landlord and Tenant hereby agree that Tenant *may contract for snow and ice removal* in the Common Areas, on behalf of the Landlord without prior notice and Landlord shall reimburse Tenant for the cost of said snow and ice removal within 30 days after Landlord has received a paid copy of the invoice.

(Emphases added).

ability to use the parking lot was non-exclusive with regard to the other businesses located in the strip shopping mall. Moreover, Campbell's injury occurred while she was walking to her car, which was nearly 100 yards away from the store – not in an area that could arguably be characterized as the exclusive means of ingress and egress into the Food Lion store. Compare Prince v. Pan American Airways, 6 Va. App. 268, 270, 274, 368 S.E.2d 96, 97-98 (1998) (finding that a walkway leading from a public sidewalk onto the grounds surrounding the building in which employer's office was located, and to the entrance of that building, was an essential means of ingress and egress from the public right-of-way to employer's place of business where claimant was injured on that walkway, approximately five feet from the building entrance). For these reasons, we find no error in the commission's determination that Campbell's fall occurred in an area that was beyond that which could be viewed as one "'in such proximity and relation as to be in practical effect a part of the employer's premises.'" Barnes, 233 Va. at 252, 355 S.E.2d at 332.

We further find no merit in Campbell's contention that the commission erroneously failed to extend the "personal comfort doctrine" to her claim. "The personal comfort doctrine, as applied to workers' compensation claims, in theory has general acceptance among the authorities." Cadmus Magazines v. Williams, 30 Va. App. 129, 132, 515 S.E.2d 797, 798 (1999).

> "Employees who, within the time and space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment, unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred, or unless, in some jurisdictions, the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment."

Id. (quoting 2 Larson, The Law of Workmen's Compensation ch. 21, p. 21-1 (1999)). The Supreme Court of Virginia has likewise approved the doctrine, noting:

> It is uniformly held that "[a]n injury sustained by an employee while engaged in the performance of an act essential to his personal comfort and convenience, but ultimately for the benefit of the employer, is compensable as 'arising out of' and 'in the course of' the employment."

Id. (quoting Bradshaw v. Aronovitch, 170 Va. 329, 336, 196 S.E. 684, 686 (1938) (citation omitted)).

However, the decisions in which this doctrine has been applied have specifically noted that the injury occurring during the "personal comfort" time occurred, *on the employer's premises*. See id. (noting the parking lot where the injury took place was enclosed by a fence, that access was controlled by employer's security guards, that the general public had no right to use the lot, and that claimant did not leave company parking lot); Bradshaw, 170 Va. at 336-37, 196 S.E. at 687 (noting that it is well settled that "[a]n injury sustained by an employee while in the act of satisfying his thirst ordinarily arises 'out of' and 'in the course of' the employment," "provided the employee uses the facilities furnished to him by the employer, or does not depart from the employer's premises, or go to some place thereon where he has no right to be" (internal quotation omitted)); see also Prince, 6 Va. App. at 272, 368 S.E.2d at 97 (holding that the "going to and from work" doctrines apply to those employees leaving the premises to take a lunch break, but noting that such doctrines apply in the case of the extended premises doctrine when the employee was in an area "'in such proximity and relation as to be in practical effect a part of the employers' premises'" (quoting Barnes, 233 Va. at 252, 355 S.E.2d at 331)). That is not the case here. Thus, as we have found that Campbell's injury did not occur on the employer's premises or an extension thereof, we do not address this issue further.

Finally, we find no merit in Campbell's implied claim that the commission erred in failing to hold that Food Lion violated Code § 65.2-300(A). That code section provides that

> Every employer and employee, except as herein stated, shall be conclusively presumed to have accepted the provisions of this title

> respectively to pay and accept compensation for personal injury or death by accident arising out of and in the course of the employment and shall be bound thereby.  *Except as otherwise provided herein, no contract or agreement, written or implied, and no rule, regulation or other device shall in any manner operate to relieve any employer in whole or in part of any obligation created by this title.*

Code § 65.2-300 (emphasis added).  Campbell contends that by failing to undertake maintenance of the parking lot, or by failing to take exclusive possession of the parking lot by its contract with the landlord, Food Lion violated this statute.  However, the statute clearly requires only that an employer not attempt to "contract out" of his or her duties and obligations under the Act.  It does not require – contrary to Campbell's implicit assertion – that an employer make agreements that would effectively extend its liability beyond the bounds of its own premises.

For these reasons, we affirm the decision of the commission.

Affirmed.