COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Chaney, Callins and White
Argued at Alexandria, Virginia


UNITED CONTINENTAL HOLDINGS, INC.

                                                        OPINION BY
v.        Record No. 0164-23-4              JUDGE DOMINIQUE A. CALLINS
                                                     JANUARY 23, 2024
MOLLY SULLIVAN


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Jennifer Ramey Helsel (Danielle A. Takacs; Franklin & Prokopik,
> P.C., on brief), for appellant.
>
> Kathleen Grace Walsh (Law Office of Kathleen Grace Walsh, on
> brief), for appellee.


United Continental Holdings, Inc., appeals the Commission's judgment awarding Molly

Sullivan temporary total disability benefits and medical benefits for her left ankle, right knee, and

right arm injuries. United argues that the evidence failed to prove that Sullivan sustained a

compensable injury by accident that arose out of and in the course of her employment. Finding no

error, we affirm the Commission's judgment.

### BACKGROUND

In June 2021, Sullivan worked as a customer service representative for United Airlines at

the Dulles Airport. In the past, airline employees parked in lots some distance from the terminal.

Buses then transported the employees from those parking lots to the airport's terminal. After the

COVID-19 pandemic, however, employees began parking in Garage 2, a lot located closer to the

terminal and typically used by airport customers and the public. Although employees could park in

other lots, the Metropolitan Washington Airport Authority ("MWAA") provided free parking for

employees in Garage 2.

To access the airport terminal from Garage 2, employees could either walk along a covered walkway that extended from the garage's third level, or they could leave through the garage's first floor exit and walk across a street to enter the airport. United employees would clock into work on the third level of the terminal, so using the walkway was generally the most direct route for United employees. Sullivan also preferred the walkway because it avoided vehicular traffic.

The walkway connected to the garage by a "silver threshold." The walkway then extended for 80 yards away from the threshold before turning right and ending about 30 feet from the United terminal entrance. It existed as a single path between Garage 2 and the section of the terminal to which United employees reported, and it had no connecting or branching walkways leading to alternate locations of the garage or the terminal. The MWAA owned, operated, and maintained the garage, the walkway, and other areas surrounding the terminal. United was not responsible for the walkway's maintenance.

On June 20, 2021, Sullivan parked in Garage 2 and entered the third-floor walkway to reach the terminal. After passing the silver threshold, she slipped on water, "twisted [her] left foot," and fell, striking her right knee and arm. An ambulance transported Sullivan to a local hospital; she later received follow-up care from her primary care physician and an orthopedist for injuries to her left foot, right knee, and right arm. She participated in physical therapy, and her primary care physician released her to full duty at work on September 20, 2021.

Sullivan filed a claim seeking temporary total disability benefits from the date of injury through her return to full duty and seeking medical benefits for her injuries. The parties stipulated that Sullivan was totally disabled during the claimed timeframe, but United contested that Sullivan had sustained a compensable injury. After a hearing, the deputy commissioner ruled that Sullivan's injury did not arise in the course of her employment. The deputy commissioner found that "the subject walkway was not the sole means of ingress and egress to her place of employment," the

employer did not control the parking garage or the walkway, and Sullivan was not required to park there. The deputy commissioner further found that the area where Sullivan fell was not sufficiently near the entrance to United's terminal so that the area was an extension of United's premises.[1]

On review, the Commission reversed the deputy commissioner's judgment. The Commission found that, under the extended premises doctrine, an employee may suffer a compensable injury even though the accident was on property not owned by the employer because the property was "in such proximity and relation to the space leased by the employer as to be in practical effect the employer's premises." Considering the configuration of the garage and the walkway in relation to the Dulles Airport, the Commission found that the accident was in sufficient proximity to the terminal that it occurred on United's extended premises.[2] Accordingly, the Commission remanded the matter to the deputy commissioner to determine whether Sullivan's injuries were otherwise compensable.

On remand, the deputy commissioner found that Sullivan suffered a compensable injury by accident and awarded her temporary total disability benefits for the claimed timeframe and medical benefits for the left ankle, right knee, and right arm injuries. United requested that the Commission review the deputy commissioner's judgment, challenging only the Commission's prior ruling that the injury arose in the course of Sullivan's employment, and specifically, the Commission's application of the extended premises doctrine. Relying on its previously stated grounds, the Commission affirmed the judgment of the deputy commissioner.

---

[1] In so finding, the deputy commissioner contrasted the facts with those presented in an unpublished opinion of this Court, *Cap. Area Pediatrics, Inc. v. Eken*, No. 1557-12-4, 2013 WL 1897827 (Va. Ct. App. May 7, 2013).

[2] One commissioner dissented, emphasizing that the accident occurred more than 80 yards from the terminal.

United appeals to this Court, arguing that the Commission erred by finding that Sullivan's injury occurred in the course of her employment. United maintains that the extended premises doctrine does not apply because Sullivan slipped on a walkway that was more than 80 yards from the terminal and connected to a parking lot that United had "no control over." Accordingly, United asks this Court to reverse the Commission's judgment.

ANALYSIS

Liability under the Workers' Compensation Act is distinct from traditional tort liability. Thus, we find it necessary to consider the purpose of the law. "The Workers' Compensation Act, now over a century old, 'reflects a legislative "quid pro quo" that gave workers the right to assert no-fault liability against their employers . . . and took from them the right to sue their employers in tort for negligence.'" *Lopez v. Intercept Youth Servs., Inc.*, 300 Va. 190, 196 (2021) (quoting *Jeffreys v. Uninsured Emp.'s Fund*, 297 Va. 82, 93 (2019)). "To be effective, the Act must be interpreted to maintain that delicate balance of competing policies." *Id.* "A view of the Act's coverage that is too broad would authorize an award of compensation benefits but would bar a tort recovery, and a view that is too narrow would authorize a tort recovery but would bar an award of compensation benefits." *Jeffreys*, 297 Va. at 93. It is this "delicate balance" we seek to strike in considering whether an injury sustained by an employee as she begins to walk a path that leads to her workplace is compensable under the Act.

Generally, a compensable injury "means only [an] injury by accident arising out of and in the course of the employment or occupational disease." Code § 65.2-101. This definition "polices the border between coverage and noncoverage" under the Act. *Lopez*, 300 Va. at 196. "[A]n accident occurs in the 'course of employment' when it takes place within the period of employment, at a place where the employee may be reasonably expected to be, and while [she] is

reasonably fulfilling the duties of [her] employment or is doing something which is reasonably incidental thereto." *Clifton v. Clifton Cable Contracting, L.L.C.*, 54 Va. App. 532, 539 (2009).

Whether an injury arises out of and in the course of employment is a mixed question of law and fact. *Kendrick v. Nationwide Homes, Inc.*, 4 Va. App. 189, 190 (1987). The Supreme Court has evaluated this question in two contexts: when an employee is going to or coming from a workplace, *Kent v. Virginia-Carolina Chem. Co.*, 143 Va. 62, 66 (1925), and when an injury occurs at a location in such proximity to a workplace that the location is "in practical effect a part of the employer's premises," *Brown v. Reed*, 209 Va. 562, 565 (1969) (quoting *Bountiful Brick Co. v. Giles*, 276 U.S. 154, 158 (1928)).

Under long-standing precedent, injuries sustained while going to or from work generally are not compensable under the Act. *See Kendrick*, 4 Va. App. at 190-91; *Kent*, 143 Va. at 66. This is what we have come to recognize as the "general rule of 'going and coming.'" *Hunton & Williams v. Gilmer*, 20 Va. App. 603, 606 (1995). The basis for the rule is that an employee going to or coming from work "is not engaged in performing any service growing out of and incidental to [her] employment." *Boyd's Roofing Co. v. Lewis*, 1 Va. App. 93, 94 (1985) (quoting *Kent*, 143 Va. at 66). Because the employee is not yet "on the job," the injury does not arise in the course of employment. *Cleveland v. Food Lion, LLC No. 0578*, 43 Va. App. 514, 519 (2004) (quoting *Sentara Leigh Hosp. v. Nichols*, 13 Va. App. 630, 636 (1992) (en banc)). Thus, an injury resulting from an individual traveling a route between her home and her place of work is not considered to have arisen "in the course of the employment."

The going and coming rule has recognized exceptions. An injured employee can nonetheless recover when "going to" or "coming from" the workplace:

> (1) where the means of transportation used to go to and from work is provided by the employer or the employee's travel time is paid for or included in wages; (2) where the way used is the sole means of ingress and egress or is constructed by the employer; and

(3) where the employee is charged with some duty or task connected to his employment while on his way to or from work.

*Id.* at 519 (quoting *Sentara Leigh*, 13 Va. App. at 636); *see also Kent*, 143 Va. at 66.

Distinct from the going and coming rule is the extended premises doctrine. The extended premises doctrine is best exemplified in the seminal case *Brown v. Reed.* In *Brown*, the employer maintained on its premises a company parking lot, a shower, and a locker room for the convenience of its employees. *Brown*, 209 Va. at 563. After Brown parked in the parking lot, went to the locker room, and "started back across the parking area en route to . . . where he would punch the time clock," Reed's automobile struck and injured Brown "as he was walking in the passageway between the spaces in the parking area." *Id.*

The Court considered whether Brown's injury arose "out of and in the course of employment." *Id.* at 563-64. In doing so, the Court relied on the "time, location and circumstances of the accident place," stating "[t]here is no such thing as 'instantaneous exit'" when an employee "punches a time clock." *Id.* at 564-65. Rather,

> employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. . . . [T]he employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached.

*Id.*; *accord Scott v. Willis*, 150 Va. 260, 268 (1928). As we have since recognized, "the Supreme Court of Virginia drew a 'bright line' at the employer's door in *Brown v. Reed*." *Gilmer*, 20 Va. App. at 605. "[I]f an employee is injured while going to and from . . . work *and* while on the employer's premises, the injury is treated at law as though it happens while the employee is engaged in his work at the place of its performance." *Id.* This is because an employee may be injured in such proximity to her jobsite that the site of the injury is "in practical effect a part of

- 6 -

the employer's premises." *Brown*, 209 Va. at 565 (quoting *Bountiful Brick Co.*, 276 U.S. at 158).

Under the extended premises doctrine, the door to a workplace location "extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer." *Bountiful Brick Co.*, 276 U.S. at 158. The "employer's door" may represent a time or space in advance of a physical entry to the workplace where such time or space is a means of ingress or egress to the physical entry. *See Scott*, 150 Va. at 268 ("In other words, the employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached.").

Injuries occurring in places where an employer "has some kind of right of passage" to and from a building, such as "common stairs, elevators, lobbies, vestibules, concourses, hallways, walkways, ramps, footbridges, driveways, or passageways through which the employer has something equivalent to an easement" are "generally considered to have taken place on the employer's premises." *Prince v. Pan Am. World Airways*, 6 Va. App. 268, 273-74 (1988) (quoting 1 A. Larson, *Workmen's Compensation Law* § 15.43 (1985)). This is true "even if the employer did not own or lease the particular place where the injury occurred." *Id.* at 273; *accord Brown*, 209 Va. at 565. Under these circumstances, the injury arises in the course of employment, and it is compensable.

We have considered the extended premises doctrine in two contexts—injuries occurring in passageways and injuries occurring in parking lots. When an employee is injured on the employer's extended premises, the employee is not transiting to the workplace so as to implicate the "going and coming" rule. Rather, the employee has in fact already arrived at the workplace. Thus, the application of either the "going and coming" rule or the extended premises doctrine relies wholly upon the factual circumstances of the case.

Although the extended premises grants a "reasonable margin of time and space," the doctrine has its limitations. In *Cleveland*, we recognized that parking lots are distinct from sidewalks. *Cleveland*, 43 Va. App. at 520-21 (recognizing that "[i]n [that case]," the "parking lot is not the equivalent of the sidewalk"). When a parking lot is not owned nor controlled by the employer, the Commission's application of the doctrine "rests on a combination of criteria, including but not limited to proximity, authority, and responsibility for maintenance." *Id.* at 519. Accordingly, we have held that when an employee voluntarily paid to park in a garage owned by her employer's landlord and located across the street from the workplace, the injury she sustained from slipping inside the garage did not arise in the course of her employment. *Gilmer*, 20 Va. App. at 604, 607-08.

Where an employee's injury occurs on a passageway or walkway, the analysis shifts. In *Prince*, we held that an employee suffered an injury in the course of her employment when she slipped on an icy walkway that extended from a public sidewalk to a building where her employer was a tenant. *Prince*, 6 Va. App. at 273-74. Since the walkway constituted an essential means of ingress and egress to the workplace, we held that it was "in practical effect a part of the employer's premises." *Id.* at 274 (quoting *Barnes v. Stokes*, 233 Va. 249, 252 (1987)). When an employee's presence on such walkway is "required and expected by virtue of her employment," the employer impliedly consents to the employee's use of the walkway to access the workplace, and an injury occurring thereon arises in the course of her employment. *Id.* at 273. Conversely, we have held that a publicly-used traffic lane connecting a parking lot to an employer's workplace did not extend the employer's workplace under the doctrine. *See Cleveland*, 43 Va. App. at 520-21. "[W]hen a court has satisfied itself that there is a distinct 'arising out of' or causal connection between the conditions under which [the] claimant must approach and leave the premises and the occurrence of the injury, it may hold that the course of

employment extends *as far as* those conditions extend." *Gilmer*, 20 Va. App. at 608 (emphasis added).

Similarly, we have held that an employee suffered an injury under the extended premises doctrine when he slipped on an icy "concrete apron" that connected a public street, where the employee parked, to the driveway of his jobsite. *Wetzel's Painting & Wallpapering v. Price*, 19 Va. App. 158, 159, 161 (1994). Because the employee was "required to traverse the concrete apron leading from the public street into the driveway," we held that the concrete apron was "in practical effect a part of the employer's premises," and "it was irrelevant that other entrances into the building were available." *Id.* at 161; *see also Prince*, 6 Va. App. at 274 (holding that because the injury occurred on property that was "in practical effect" a part of the employer's premises under the extended premises doctrine, it was "irrelevant" that the employee could have used another path to enter the building).

The extended premises doctrine also applies here. On the date of the accident, MWAA directed Sullivan and other airport employees to Garage 2 as the only free parking option.[3] From the garage, the walkway located beyond the parking lot provided Sullivan and other United employees "some kind of right of passage" to reach the terminal. *Prince*, 6 Va. App. at 273 (quoting 1 Larson, *supra*, § 15.43). Indeed, the walkway led directly to the terminal, stopping short of the terminal entrance by 30 feet. Like in *Prince*, although the walkway was not the only way to get to the destination, the walkway was an essential means of ingress and egress from the airport terminal. Further, Sullivan's presence on the walkway was required and reasonably expected by virtue of her employment within the terminal. *See id.* at 271, 274; *Wetzel's*

---

[3] In *Barnes v. Stokes*, the Supreme Court held that the parking lot was a part of the workplace's extended premises when the employer did not own the lot but "required" the employees to park there. 233 Va. at 252-53. Although the fact that a parking lot is free is certainly not dispositive, compulsion or an incentive—such as free parking—is a factor to consider in this analysis.

*Painting*, 19 Va. App. at 161 (holding that the concrete apron was on an essential path to the jobsite even though "other entrances . . . were available"). The circumstances present a sufficient "causal connection between the conditions under which [Sullivan] must approach and leave the [terminal] and the occurrence of the injury" to establish that the injury occurred in the course of her employment. *Gilmer*, 20 Va. App. at 608. Once Sullivan crossed the "silver threshold" from Garage 2 onto the walkway that led directly and exclusively to the United terminal, Sullivan effectively entered United's workplace under the extended premises doctrine.

United argues that this case is analogous to *Gilmer*. But we find this case and *Gilmer* to be factually distinguishable. Here, Sullivan did not slip in a parking lot; instead, she slipped after passing the threshold that divided the parking lot from the walkway that led to her workplace. *See also Cleveland*, 43 Va. App. at 521 ("[the] parking lot is not the equivalent of the sidewalk"). In *Gilmer*, we explained that whether the extended premises doctrine encompasses an injury that occurred in a parking lot does *not* primarily turn on "proximity, or reasonable distance, or even the identifying of surrounding areas with the [employer's] premises." *Gilmer*, 20 Va. App. at 608. Rather, as previously stated, the doctrine applies "when a court has satisfied itself that there is a distinct 'arising out of' or causal connection between the conditions under which claimant must approach and leave the premises and the occurrence of the injury." *Id.*

United also emphasizes that Sullivan's accident occurred more than 80 yards from the terminal but "only two steps" removed from the parking lot.[4] Those circumstances do not

---

[4] In making this point, United argues that it is unfair to hold an employer accountable for premises it cannot see. But that is a concern for tort liability, not liability under the Workers' Compensation Act. The Workers' Compensation Act allows compensation for many unseen hazards. Indeed, a vital part of the "legislative quid pro quo" is that employees may assert "no-fault liability against their employers." *Lopez*, 300 Va. at 196 (quoting *Jeffreys*, 297 Va. at 93). Thus, applicability of the extended premises doctrine does not turn on whether the injury

require reversal. As in *Prince*, whether a location constitutes an extension of an employer's workplace does not turn on the distance from the passageway to the workplace but on the character of the passageway on which the claimant fell. *Prince*, 6 Va. App. at 273-74. The walkway in *Prince* was "in practical effect a part of the employer's premises," *id.* at 274 (quoting *Barnes*, 233 Va. at 252), because it "was a common avenue of passage over the grounds and an essential means of ingress and egress from the public [location] to [the employer's] place of business," *id.* Similarly, in *Wetzel's Painting*, we relied primarily on the fact that the concrete apron formed part of an essential and "required" path leading from the public street to the jobsite without reference to the distance from the jobsite that the injury occurred. *Wetzel's Painting*, 19 Va. App. at 161. In *Brown*, the Supreme Court did not even describe the distance between the jobsite and the injury. *See Brown*, 209 Va. at 563. The distance between the injury and the premises is not dispositive. Instead, the relevant inquiry is whether the employee is on "adjacent premises used by the employee as a means of ingress and egress." *Bountiful Brick Co.*, 276 U.S. at 158. Once Sullivan crossed the silver threshold onto the walkway, she was no longer in the parking lot. Instead, she was on the walkway, using it as a means of ingress and egress consistent with the implied consent of her employer. Thus, under the extended premises doctrine, Sullivan's injury occurred on property that was in practical effect part of United's premises.[5] Therefore, the Commission did not err in finding that Sullivan's injury arose out of and in the course of her employment.

---

occurred within visibility of the workplace, but whether the injury location is sufficiently essential as to constitute the workplace.

[5] United also argues that this result creates an "airport exception" to the going and coming rule because the distance between the site of the injury and United's terminal was over 80 yards. We find no support for that argument. Many workplaces expand over large distances or occupy space within large buildings. Whether at an airport or in an office building, the relevant inquiry is whether, at the time of injury, the employee has crossed the threshold between

CONCLUSION

For the foregoing reasons, we affirm the Commission's judgment.

*Affirmed*.

---

a "common area" onto property that serves as a means of direct ingress to her workplace. *See Cleveland*, 43 Va. App. at 520.